**ECI MANAGEMENT CORPORATION;
Allstate Insurance Company,
Plaintiffs–Appellants,**

**v.**

**SCOTTSDALE INSURANCE COMPANY,
Defendant–Appellee.**

No. 93–8365.

United States Court of Appeals,
Eleventh Circuit.

June 21, 1994.

James Townshend Budd, Eugene P. Chambers, Jr., Chambers Mabry McClelland & Brooks, Atlanta, GA, for appellants.

Jon B. McPhail, Diane Cherry, McPhail & Marmur, Atlanta, GA, for appellee.

Before EDMONDSON, Circuit Judge, GODBOLD and JOHNSON, Senior Circuit Judges.

GODBOLD, Senior Circuit Judge:

ECI Management Corporation entered into a management agreement to manage an apartment complex located in Marietta, Georgia. The complex was owned by Cobb–Bentley Associates, Ltd., a partnership controlled by four persons who also owned a controlling interest in ECI. Pursuant to a provision of the management agreement the owners obtained a comprehensive general liability insurance policy with Allstate Insurance Company on which ECI was named as an additional insured. ECI acquired a landlords' and tenants' liability insurance policy from Scottsdale Insurance Company, naming it as insured. ECI maintained an office at 2700 Delk Road, near to but not in the apartment complex, and other offices at other sites.

A female tenant sued ECI and Cobb–Bentley, alleging that she was sexually assaulted at her apartment in the complex because of negligence of Cobb–Bentley and ECI. Allstate employed legal counsel who represented Cobb–Bentley and ECI, as required by its policy. ECI requested Scottsdale enter a defense on its behalf, but Scottsdale refused to either defend or settle the case, on the ground that its coverage did not extend to apartments in the complex.

ECI settled the tenant's suit for $500,000. It entered a "loan receipt" agreement with Allstate under which Allstate funded the settlement costs. In a loan receipt arrangement an insurer lends its insured an amount of money commensurate with the insured's claim against his insurance coverage, and the insured promises to repay if, and to the extent that, the insured recovers from third parties for the loss. See June F. Entman, *More Reasons for Abolishing Federal Rule of Civil Procedure 17(a): The Problem of the Proper Plaintiff and Insurance Subrogation,* 68 N.C.L.Rev. 893 (1990). Thus, Allstate loaned ECI the funds to defend and settle the tenant's suit, and ECI promised to reimburse Allstate to the extent it was successful in recovering from Scottsdale.

ECI filed a diversity action in federal court against Scottsdale, claiming damages for breach of contract and bad faith refusal to honor its insurance contract and seeking a declaratory judgment. Scottsdale moved to substitute Allstate as the real party in interest under Fed.R.Civ.P. 17(a). The court granted the motion to the extent that it directed that Allstate be added as a party plaintiff in the case. At trial the court di-

rected a verdict in Scottsdale's favor on the issue of bad faith refusal to defend. The court submitted to the jury special interrogatories under Fed.R.Civ.P. 49(a), directed to the sole issue of the intentions of ECI and Scottsdale respecting liability coverage. The interrogatories and answers are set out in the margin.[1] The jury answered all questions favorably to Scottsdale, and the court entered judgment for Scottsdale. ECI and Allstate appeal.

## I.  Allstate as plaintiff

■■ The district court erred in adding Allstate as a plaintiff pursuant to F.R.Civ.P. 17, the real party in interest rule. Real party in interest analysis is a matter of federal procedure, but we refer to state law to identify the true owner of the legal interest at issue. *DM II, Ltd. v. Hospital Corp. of America*, 130 F.R.D. 469 (N.D.Ga.1989). *U.S. Fire Ins. Co. v. Farris*, 146 Ga.App. 177, 245 S.E.2d 868 (1978). Georgia recognizes that the insurer giving a loan receipt is not the real party in interest, and an action against a third party as tortfeasor may be brought in the name of the insured. *U.S. Fire Ins. Co.*, 245 S.E.2d at 869; *Southeast Transp. Corp. v. Hogan Livestock Co.*, 133 Ga.App. 825, 212 S.E.2d 638 (1975).[2]

■■ The error, however, was not reversible. Under Georgia law evidence of an insured's insurance coverage is not admissible in a negligence action against the insured. *Collins v. Davis*, 186 Ga.App. 192, 366 S.E.2d 769 (1988). *See also Cincinnati Ins. Co. v. Reybitz*, 205 Ga.App. 174, 421 S.E.2d 767 (1992). In such a case the insurance company is not directly involved in the litigation. Its only connection is the possibility that it is a collateral source that will have to bear some or all of the damages against the insured. The present case is a breach of contract case in which there are no issues of negligence, the subject matter is damages for alleged breach, and Allstate is not a collateral source but a potential beneficiary, in a factual context in which its policy and the coverage extended by it are essential information relating to ECI's intentions. Allstate was inextricably involved in the contest between ECI and Scottsdale in which the central issue was whether ECI, knowing that it was an additional insured under Allstate's policy, intended to obtain from Scottsdale coverage that substantially duplicated the coverage afforded by Allstate. Plaintiffs themselves introduced substantial evidence concerning the Allstate policy and the relation between that policy and the Scottsdale policy. In their direct case plaintiffs introduced the testimony of an Allstate salesman who described the

---

**1.**  1. Did ECI Management Corporation intend to have liability insurance coverage for the ECI Management office located at 2700 Delk Road?
Yes X    No___
2. Did ECI intend to have liability insurance coverage for the ECI Management office and all operations necessary or incidental to the use of that office if the operation of that office caused a bodily injury outside of the office?
Yes___   No X
3. Did ECI intend to have a policy that provided insurance coverage only for the 200 square foot ECI Management office? (and the other four specifically listed locations)
Yes X    No___
4. Did Cheryll Whelan (on behalf of ECI) intend to obtain liability insurance for all of ECI Management Corporation's business operations, wherever located, under the Scottsdale OL & T policy?
Yes___   No X
5. Did Debbie Cornwell (on behalf of Scottsdale) intend to provide liability insurance for all of ECI Management Corporation's business operations, wherever located, under the Scottsdale OL & T policy?
Yes___   No X

6. Did Cheryll Whelan and Debbie Cornwell intend for the Scottsdale OL & T policy to cover all of ECI Management Corporation's liability exposure for bodily injury, wherever it may occur, for $37 per year?
Yes___   No X
7. Did Cheryll Wheland (on behalf of ECI) intend for the Scottsdale OL & T policy to provide coverage for bodily injuries at apartment complexes not listed on the declarations page?
Yes___   No X
8. Did Debbie Cornwell (on behalf of Scottsdale) intend for the Scottsdale OL & T policy to provide coverage for bodily injuries at apartment complexes not listed on the declarations page?
Yes___   No X

**2.**  Scottsdale urges on appeal that joinder of Allstate was required because it was a necessary and indispensable party under Rule 19. The district court did not address that issue, therefore we shall not do so.

Allstate policy, the premium charged, and the coverage afforded. He also testified concerning his perception that ECI did not intend to procure from Scottsdale insurance coverages that duplicated the Allstate coverage. Plaintiffs also adduced the testimony of a senior claims representative of Allstate who testified that his company provided a defense for Cobb–Bentley for several months before ECI was added as a defendant. He gave his conclusion that the Scottsdale policy was not limited to coverage of ECI's office on Delk Road. He described Allstate's request that Scottsdale provide a defense for ECI in the tenant's lawsuit, of Allstate's offer to enter into a compromise agreement with Scottsdale in connection with the defense of that suit, and Allstate's decision to settle that suit by payment of $500,000.[3]

Many decisions treat the loan receipt device as a sham and the "loan"—payable only if the "borrower" recovers from another source—as constituting payment of the insured's claim, with the result that the insurer is subrogated and must sue in its own name. Wright, Miller and Kane, *Fed.Prac. and Proc.* § 1546, pp. 358–60 and cases cited. We accept the characterization given to loan receipts by Georgia, which treats the insured as the real party in interest. But we note that the revelation of an interest of Allstate by joining it as plaintiff, viewed by Allstate as egregiously prejudicial and requiring reversal, is in many jurisdictions viewed as not prejudicial at all and in fact demanded by the true nature of the loan receipt transaction.

Additionally, the interrogatories to the jury were precisely drawn and sharply focused on the sole issue of the intentions of ECI and Scottsdale. Under all the circumstances the naming of Allstate as an additional plaintiff was not reversible error.

## II. Bad faith

■ ECI and Allstate asserted claims for attorney fees and a statutory penalty for refusal to defend and denial of coverage. The district court granted a directed verdict on these claims. This was not error. The burden of proving bad faith was on the insured. As we discuss in Part III, below, there were reasonable grounds to contest the claim and no other grounds for bad faith were shown.

## III. Construction of the insurance policy and determination of the intent of the parties.

■ By pre-trial motion to dismiss Scottsdale contended that ECI's claim was not covered by its policy because the "insured premises" consisted only of the leasing office of ECI at the apartment complex, while the tenant claimed to have been assaulted in her apartment. The district judge carefully analyzed the policy. He held that the pertinent terms of the policy were ambiguous. Then, applying rules for construction of an ambiguous contract (including construing the policy in favor of the insured), he concluded that he could not say from the language of the policy itself that the "insured premises" were limited to the Delk Road office or that the claims asserted by the tenant did not arise out of the ownership, maintenance or use of that office and all operations necessary or incidental thereto. The motion to dismiss was, therefore, denied. Once the trial judge had rejected Scottsdale's contention that the contract on its face included only ECI's office and therefore did not extend to the tenant's claim of injury while in her apartment, it remained for the jury as fact finder to examine the intent of the parties in the light of all the circumstances and to determine the coverage that the parties intended and whether that coverage extended to the apartments.

---

**3.** The jury knew that Allstate had paid $500,000 to settle the tenant's suit and paid $64,000 plus in defense of that suit. Interrogatories 9 and 10 were:

9. How much (if any) of the $500,000 paid to settle the [tenant's] lawsuit was paid by Allstate to settle the liability of:

A. Cobb–Bentley Associates $ _____
B. ECI Management Corporation $ _____

(These numbers should total $500,000).
10. How much (if any) of the $64,750.57 paid by Allstate was paid for the defense of:

A. Cobb–Bentley Associates $ _____
B. ECI Management Corporation $ _____

(These numbers should total $64,750.57).
To both of these the jury answered "Do Not Know."

The various possibilities of coverage intended by the parties were properly presented to the jury by interrogatories Nos. one through eight, and in every instance were answered favorably to Scottsdale. The jury was not required to apply for the second time the principles of construction of an ambiguous contract that already had been correctly applied by the judge in his order on motion to dismiss. At trial, with coverage of the apartments not excluded by the policy itself as construed by the judge, there was left for determination by the jury the issue of the coverage intended by the parties under all the circumstances. This issue the judge appropriately and correctly submitted to the jury.[4]

AFFIRMED.

---

4. Rule 49(a) provides that an omitted finding of fact will be deemed to have been made by the court in accordance with a judgment entered on a jury's Rule 49(a) specific findings of fact. But resort to deemed findings is not required in this case. The district judge, in properly dividing the issues between himself and the jury's Rule 49(a) role, made specific findings that discharged his role and left intact the jury's role.

