Ruth **MUZUCO**, Plaintiff,

v.

**RE$UBMITIT, LLC et al.,** Defendants.

No. 11–62628–Civ.

United States District Court,
S.D. Florida.

Aug. 28, 2013.

---

508

**510**

Edward F. Haber, Shapiro Haber & Urmy, LLP, Boston, MA, John Joseph Uustal, Jordan M. Lewis, Kelley Uustal Law Firm, Fort Lauderdale, FL, Jeffrey M. Liggio, Liggio Benrubi, West Palm Beach, FL, for Plaintiff.

Alexis Ann Calleja, Infante, Zumpano, Hudson & Miloch, LLC, Robert Wayne Hudson, Hudson & Calleja, LLC, Coral Gables, FL, William T. Repasky, Frost, Brown, Todd, LLC, Louisville, KY, for Defendant.

## ORDER ON MOTION FOR CLASS CERTIFICATION

ROBERT N. SCOLA, JR., District Judge.

THIS MATTER is before the Court on Plaintiff Ruth Muzuco's Motion for Class Certification [ECF No. 59]. For the reasons explained in this order, the Court finds that class certification is appropriate.

### Factual Background

In this putative class-action lawsuit, Plaintiff has alleged that the Defendants' alleged debt collection practices violate the Fair Debt Collection Practices Act ("FDCPA") and the Federal Electronic Funds Transfer Act ("EFTA"). Plaintiff has also asserted claims for conversion, unjust enrichment, and civil conspiracy.

In December 2010, Plaintiff wrote a check to her attorney, Larry Harshman, which was to be paid from her Bank of America account. Harshman deposited the check into his BankAtlantic account, but the check was returned unpaid due to insufficient funds. BankAtlantic did not return the check to Plaintiff's bank, the typical method of dealing with a returned check. Instead, and in accordance with its agreement with Re$ubmitIt, LLC and BSG Financial (referred to collectively as "Re$ubmitIt"), BankAtlantic forwarded the check to Re$ubmitIt.

Under the Defendants' agreement with Re$ubmitIt, Re$ubmitIt collected debts for returned checks on behalf of BankAtlantic customers. BankAtlantic allegedly sent all account holders a mailing announcing their enrollment in Re$ubmitIt's check recovery service. The account holders did not have to respond to the mailing in any way; enrollment was automatic. The mailing included instructions on how to unenroll from the service, as well as a notice (the "Notice") that the account holder, typically a business, was required to display to its customers:

**Your Check is Good Here.**

### CHECK POLICY

**By using a check for payment, you agree to the following terms:** In the event your check is dishonored or returned for any reason, you authorize us to electronically (or by paper draft) re-present the check to your bank account for collection of the amount of the check, plus any applicable fees as permitted by state law.

866/860–5906 Re$ubmitIt

After enrollment, BankAtlantic would automatically send any returned check deposited by a BankAtlantic account holder to Re$ubmitIt for collection. In the process of attempting to collect the debts, Re$ubmitIt assessed a fee (an "NSF Fee") upon the writers of bad checks and then shared those fees with BankAtlantic.

As a BankAtlantic customer, Harshman was automatically enrolled in the Re$ubmitIt program. So, Re$ubmitIt made a second attempt to collect the check from Plaintiff's account. Plaintiff alleges that Re$ubmitIt communicated with her bank, Bank of America, to determine whether she had sufficient funds in her account to cover the representment. Upon representment, however, the original check was again returned for insufficient funds.

At the same time, Re$ubmitIt allegedly initiated a $50 automated electronic funds transfer, in the form of an electronic check, from Plaintiff's bank account. The electronic check appeared to be from the Plaintiff and made payable to Harshman. The memo portion of the check read, "NSF FEE FOR CHECK 378," which was the number of the returned check, and the signature line contained the following:

RE$UBMITIT, LLC 866–860–5906
**Authorized by your depositor**
No signature necessary
**Pre-authorized by your account holder**

According to the Complaint, neither Plaintiff nor Harshman actually authorized the $50 electronic check, which cleared Plaintiff's account and was subsequently shared between Re$ubmitIt and BankAtlantic.

After discovering the withdrawal, Plaintiff complained about the NSF Fee to Harshman. Harshman agreed to reduce her bill by the same amount. Although Harshman received the automatic enrollment mailings, Harshman did not recall reading them and was unaware that he was enrolled in Re$ubmitIt's program. Harshman did not display the Notice.

Plaintiff has moved to certify a class, consisting of all persons from whom Re$ubmitIt collected an NSF Fee during the applicable statutes of limitations. Plaintiff also moved to certify a subclass consisting of all persons from whom Re$ubmitIt collected an NSF Fee whose returned checks were deposited in an account with BankAtlantic during the applicable statutes of limitations. See Pls' Mot. for Class Certification [ECF No. 59]. Defendants oppose class certification for three main reasons. First, Defendants argue that Plaintiff lacks standing. Second, Defendants contend that there are too many individual considerations that must be taken into account as to each putative class-member, including issues of notice and consent. Third, Defendants claim that class certification would be improper for the state law tort claims. On May 23, 2013, the Court held a hearing on the parties' arguments regarding class certification. During the hearing, the Plaintiff revised the proposed class definition, limiting the class to what she initially proposed as a subclass. See Hr'g. on Class Certification Tr., May 23, 2013 [ECF No. 113].

### Legal Standard

██ Federal Rule of Civil Procedure 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir.2003). In view of the "awesome power of a district court" in controlling the class action mechanism, any decision to certify a class must rest on a "rigorous analysis" of the requirements of Rule 23. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir.2010) (citation omitted); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). While the district court's class certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, —— U.S. ——, 133 S.Ct. 1184, 1195, 185 L.Ed.2d 308 (2013) (citations omitted). Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *See id.*

██ "The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co.*, 350 F.3d at 1187. "Under Rule 23(a), every putative class first must satisfy the prerequisites of 'numerosity, commonality, typicality, and adequacy of representation.'" *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir.2009). Rule 23(a) is satisfied only where:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class

Fed.R.Civ.P. 23(a).

Where certification is sought under Rule 23(b)(3), as it is here, the plaintiff must show, in addition to the four requirements of Rule 23(a), that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R.Civ.P. 23(b)(3); *Vega,* 564 F.3d at 1265.

### Legal Analysis

### I. Standing

■ Whether the named plaintiff has standing to sue is a threshold question in any class action case; thus, "any analysis of class certification must begin with the issue of standing." *See Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir.1987); *Prado–Steiman v. Bush,* 221 F.3d 1266, 1279–80 (11th Cir. 2000). Defendants argue that Plaintiff lacks standing because she has not suffered an injury in fact, because she is not the real party in interest, and because the EFTA does not apply to the transaction at issue in her case. These challenges are addressed, and rejected, in turn below.

#### A. Injury in Fact

■ If the plaintiff does not have constitutional standing, the district court is powerless to entertain the suit. *See Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.,* 641 F.3d 1259, 1264–65 (11th Cir.2011); *CAMP Legal Def. Fund, Inc. v. City of Atlanta,* 451 F.3d 1257, 1269 (11th Cir.2006); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "The Supreme Court has explained that the 'irreducible constitutional minimum' of standing under Article III consists of three elements: (1) an actual or imminent injury or a concrete "invasion of a legally protected interest"; (2) causation, and (3) redressability." *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130; *see also Hollywood Mobile Estates Ltd.,* 641 F.3d at 1265. The actual or imminent injury component re-

quires a showing of "a harm that is both concrete and actual or imminent, not conjectural or hypothetical." *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).

Defendants do not dispute that Re$ubmitIt withdrew $50 out of Plaintiff's bank account. Instead, Defendants claim that Harshman, by subsequently reducing Plaintiff's bill, somehow erased the actual injury that occurred when Re$ubmitIt withdrew funds from Plaintiff's account. The Defendants have cited no authority to suggest that the Court should look to recovery from a third-party when determining whether a party has suffered an injury in fact. Instead, recovery from a third-party is typically addressed by the collateral source rule, an evidentiary rule that governs the introduction of evidence of payments from collateral sources. *Benton v. CSX Transp., Inc.,* 898 So.2d 243, 245 (Fla. Dist.Ct.App.2005). Payments or reimbursements received from a collateral source are irrelevant to standing here.

■ Moreover, a plaintiff suffers an injury under Article III whenever there is a violation of a legally protected interest. The requisite injury "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *See Thorne v. Accounts Receivable Mngmt., Inc.,* 2012 WL 3108662, at *6 (S.D.Fla. July 24, 2012) (Scola, J.) (quoting *Lujan,* 504 U.S. at 578, 112 S.Ct. 2130). "The requirement of an injury-in-fact does not 'suggest that Congress cannot define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant.'" *Id.* (citation omitted). The FDCPA was established to protect consumers from certain harassing and privacy-invading conduct, and the EFTA was established to protect consumers from undisclosed fees and unauthorized electronic transactions. In furtherance of such interests, the statutes authorize an award of damages whenever a violation occurs. Plaintiff has alleged Defendants' conduct violated both statutes, and that is enough to confer upon her standing under Article III. *See Manno v. Healthcare Revenue Recovery Grp., LLC,* 289 F.R.D. 674, 682 (S.D.Fla.2013) (Scola, J.); *Thorne,* 2012 WL 3108662, at *6; *see also Jordan v.*

*ER Solutions, Inc.*, 900 F.Supp.2d 1323, 1325–26 (S.D.Fla.2012) (Dimitrouleas, J.); *Smith v. Microsoft Corp.*, 2012 WL 2975712, at *6 (S.D.Cal. July 20, 2012); *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *2–4 (N.D.Ill. Aug. 10, 2012); *Abernathy v. NCC Bus. Servs., Inc.*, 2012 WL 4320810, at *3 (N.D.Miss. Sept. 18, 2012). Accordingly, Plaintiff does not lack Article III standing.

### B. Real Party in Interest

 Relatedly, Defendants' contend that Plaintiff is not the real party in interest because Harshman reduced Plaintiff's subsequent bill by the amount of the NSF Fee. "An action must be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a). "The phrase, 'real party in interest,' is a term of art utilized in federal law to refer to an actor with a substantive right whose interests may be represented in litigation by another." *U.S. ex. rel. Eisenstein v. City of New York, N.Y.*, 556 U.S. 928, 934–35, 129 S.Ct. 2230, 173 L.Ed.2d 1255 (2009). Courts look to governing substantive law to identify the true owner of the legal interest at issue. *ECI Mgm't Corp. v. Scottsdale Ins. Co.*, 23 F.3d 354, 356 (11th Cir.1994); *Arabian Am. Oil Co. v. Scarfone*, 713 F.Supp. 1420, 1422 (M.D.Fla.1989).

Neither of the cases Defendants rely on address the substantive law governing Plaintiff's claims. *Arabian Am. Oil Co.*, 713 F.Supp. at 1420, 1422 (analyzing whether the plaintiff was the real party in interest under federal and state racketeering statutes); *Wolkenhauer v. Smith*, 822 F.2d 711, 714 (7th Cir.1987) (applying Illinois law to the plaintiff's claims). And, in *Wolkenhauer*, the court did not address whether the plaintiff was the real party in interest at all. *Wolkenhauer*, 822 F.2d at 714. Defendants' cited case law is inapplicable, and they have failed to demonstrate that Plaintiff is not the real party in interest for her claims.

 Both the FDCPA and the EFTA confer real-party-in-interest status to the individual whose legally protected rights were allegedly violated. *See* 15 U.S.C. § 1692k ("[A]ny debt collector who fails to comply with any provision of [the FDCPA] with re-

spect to any person is liable to such person....."); 15 U.S.C. § 1693m ("[A]ny person who fails to comply with any provision of [the EFTA] with respect to any consumer ... is liable to such consumer...."). Re$ubmitIt was acting to collect a debt owed by Plaintiff, not Harshman. Re$ubmitIt wrote a check claiming to be authorized by Plaintiff, not Harshman. Re$ubmitIt withdrew funds from Plaintiff's account, not Harshman's account. And those funds belonged to Plaintiff, not Harshman. Because it was Plaintiff's property that was taken and because her legally protected rights were allegedly violated, Plaintiff is the real party in interest in this case.

### C. Standing Under the EFTA

Defendants also claim that Plaintiff lacks standing under the EFTA because the transaction at issue involved a paper check, and not an electronic transfer. According to Defendants, "[a]ll evidence collected through discovery ... to date verified this fact." Defendants overstate their hand. Citing her deposition transcript, Defendants first claim that Plaintiff testified that she cannot dispute that the transaction was accomplished by paper check:

> Q. Ms. Muzuco, I am going to hand you Deposition Exhibit Number 35, which is a check that has the number—check number 378 and this is a check in the amount of $50, and this is a check that appears to have the date of December 20th, 2010. Do you see that on this exhibit?
>
> A. Yes, this is the check—is the proof that Bank of America gave me in order to take to Mr. Harshman, to Attorney Harshman.

Muzuco Dep. 142:14–142:22 [ECF No. 71–3]. Defendants appear to read the word "check" to mean only a paper check. But nothing in the record demonstrates that Ms. Muzuco understood the word "check" to mean only a paper check as opposed to an electronically created check. Earlier in her deposition, Ms. Muzuco said "my bank told me that the check had become an electronic check." Muzuco Dep. 14:5–7 [ECF No. 84–2].

Defendants point to Plaintiffs' bank account statement, which lists the "Checks Posted" on her account. But there is nothing on the bank account statement that distinguishes paper checks from electronically created checks. *See* Bank of America Account Summary [Dkt. 71–4].

Defendants also direct the Court to the copy of the check attached as an exhibit to the Complaint. The Court has already found that this image does not conclusively establish that the transaction was originated by paper check, and directs the parties to its order on Defendants' Motions to Dismiss for further analysis. *See* Order on Motions to Dismiss [ECF No. 51].

Finally, Defendants argue that "in response to a subpoena duces tecum, Bank of America reveals it has no records to contradict the Defendant's claim that this particular NSF Fee Check was handled as a paper check." Defendants' Joint Surreply Memorandum of Law in Opposition to Plaintiff's Motion to Certify Class, at 7 [Dkt. 90]. The Court has reviewed Bank of America's response to the subpoena. That response similarly reveals that Bank of America provided no records that support Defendants' claim. *See* Nonparty, Bank of America, N.A.'s Responses and Objections to the Defendants' Subpoena Duces Tecum [ECF No. 75–1].

Defendants are correct that the EFTA applies only to electronic transactions. *See* 15 U.S.C. § 1693a (defining "electronic fund transfer" as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument. . . ."); 12 C.F.R § 205.3 ("The term electronic fund transfer does not include . . . [a]ny transfer of funds originated by check, draft, or similar paper instrument; or any payment made by check, draft, or similar payer instrument at an electronic terminal."); *see also Fischer & Mandell LLP v. Citibank, N.A.*, 2009 WL 1767621, at *4 (S.D.N.Y. June 22, 2009) (finding that the EFTA did not apply where the transactions at issue were initiated by paper checks and wire transfers); *Vigneri v. U.S. Bank Nat'l Ass'n*, 437 F.Supp.2d 1063, 1067–

68 (D.Neb.2006) (granting summary judgment on EFTA claim where evidence demonstrated that the transaction was initiated by a paper draft). Whether the NSF Fee here was initiated by a paper check or an electronic transfer remains a factual issue. While it is certainly true that a class representative must be a part of the class that she represents, Plaintiff has alleged that she suffered the same EFTA violation as the proposed class. *See Thorne*, 282 F.R.D. at 691–92 (citing *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2550–51, 180 L.Ed.2d 374 (2011)). She thus qualifies as a member of the proposed class at this time.

 Based on the present record, the Court finds that it would be premature and speculative to deny class certification on the possibility that the transaction at issue may have been initiated by a paper check. The Court will, however, modify the EFTA class definition accordingly. If it is conclusively established that the transaction was initiated by a paper check, the Court will adjust or decertify the class as appropriate.[1] Fed. R.Civ.P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

## II. Class Certification

### A. *Rule 23(a) Requirements*

#### i. *Numerosity*

 Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." While "mere allegations of numerosity are insufficient," Rule 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." *See Vega*, 564 F.3d at 1267 (citations omitted). "Nevertheless, a plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *See id.* (emphasis in original). Although mere numbers are not dispositive, the general rule of thumb in the Eleventh

---

1. If a party believes it to be too difficult to determine whether each transaction was initiated by a paper or electronic check on a class-wide basis, that party can bring it to the Court's attention.

Circuit is that "less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986); *Kuehn v. Cadle Co.*, 245 F.R.D. 545, 548 (M.D.Fla. 2007). The Court may also consider factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits." *See Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D.Fla.2004) (Dimitrouleas, J.); *Kuehn*, 245 F.R.D. at 548.

At the May 23, 2013 hearing, the Defendants represented to the Court that they do not contest numerosity. Plaintiff presented evidence that Re$ubmitIt collected fees from more than 21,000 returned checks forwarded by BankAtlantic. After the hearing, Defendants filed what they styled "Answers to the Court's Questions" in which they claim that 7,532 returned checks from 6,489 individual consumers were assigned from BankAtlantic to Re$ubmitIt for collection. *See* Defendants' Answers to the Court's Questions [ECF No. 108]. Re$ubmitIt claims it was unable to collect an NSF Fee in 182 of those instances, and refunded the NSF Fee to 42 individual consumers. *See id.* Using Re$ubmitIt's more conservative numbers, at least 6,000 individual consumers satisfy the proposed class definition. This number is sufficiently large for the Court to presume joinder would be impracticable.

#### ii. *Commonality*

■ "The commonality requirement demands only that there be 'questions of law or fact common to the class.'" *See Vega*, 564 F.3d at 1268 (quoting Fed.R.Civ.P. 23(a)(2)). Not all questions of law and fact need be common, but as the Supreme Court recently clarified, this requirement is not met merely because the putative class members allegedly "all suffered a violation of the same provision of law." *See Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). Indeed, it is not just the presence of common questions that matters, but the ability of the class action device

to "resolve an issue that is central to the validity of each one of the claims in one stroke." *See id.* To this end, the Supreme Court explained:

> What matters to class certification is not the raising of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.Rev. 97, 132 (2009) (internal alterations omitted)).

■ The Eleventh Circuit has noted that the Rule 23(a)(2) commonality requirement is a "low hurdle." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir.2009). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Wal–Mart Stores*, 131 S.Ct. at 2566. Here, this low hurdle is met. Defendants engaged in a common course of conduct that lead to each of Plaintiff's claims in this case. Questions on the legality of that conduct will affect all class members. *See County of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D.Fla.2010) (Moore, J.). Thus, the commonality requirement is satisfied.

■ In a footnote, Defendants argue that class certification is inappropriate because the Uniform Commercial Code ("UCC") displaces Plaintiff's common law claims. The UCC preempts some, but not all, common law claims. *See Regions Bank v. Provident Bank Inc.*, 345 F.3d 1267, 1274–75 (11th Cir.2003) ("Article 4A is not the exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer." (internal quotation marks omitted)); *Industrial Park Dev. Corp. v. American Exp. Bank, FSB*, 2013 WL 406815, at *2 (M.D.Fla. Feb. 1, 2013) (noting that the UCC preempts certain common law causes of action); *Gilson v. TD Bank, N.A.*, 2011 WL 294447, at *8–9 (S.D.Fla. Jan. 27, 2011) (Huck, J.) ("[T]he Court holds that UCC Article 4A as adopted by Florida law does

not preempt Plaintiffs' negligence claim."). Defendants have failed to develop this argument. They have not, for example, identified any Article or Section of the UCC that applies to Plaintiff's claims. And the Court is under no independent obligation to develop the argument on Defendants' behalf. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it[.]"). The Court does not find this undeveloped argument sufficient to defeat commonality. Rather, whether the UCC preempts Plaintiff's claims is a question subject to common resolution.

### iii. *Typicality*

As the name suggests, typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." *See* Fed. R.Civ.P. 23(a)(3). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir.2004) (citation omitted). Yet, the "[c]lass members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir.2012) (quoting *Prado–Steiman v. Bush*, 221 F.3d 1266, 1278–79 (11th Cir.2000) (internal alterations omitted)). The required nexus exists "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *See Ault*, 692 F.3d at 1216 (quoting *Kornberg v. Carnival Cruise*

*Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). "Thus, typicality is often met when, in proving her case, the representative plaintiff establishes the elements needed to prove the class members' case." *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 677 (S.D.Fla. 2007) (Seitz, J.). Typicality will not be present, however, if the class representative's claim is subject to unique defenses that will preoccupy the litigation to the detriment of absent class members. *Ross v. Bank S., N.A.*, 837 F.2d 980, 990–91, (11th Cir.1988), *vacated on other grounds*, 848 F.2d 1132, 1133 (11th Cir.1988). While commonality and typicality are related, the Eleventh Circuit has "distinguished the two concepts by noting that, '[t]raditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class.'" *See Vega*, 564 F.3d at 1274 (quoting *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir.2001)).

Defendants argue that unique facts in Plaintiff's case subject her claims to unique defenses. Harshman did not display the Notice provided by Re$ubmitIt. He also deposited Plaintiff's check prematurely, given that she had asked him to wait a few days before depositing it. Plaintiff did not make an unauthorized activity claim to her bank, and instead complained about the withdrawal to Harshman. Harshman subsequently reduced Plaintiff's bill by $50.

The Court is not persuaded that these unique factual circumstances undermine typicality.[2] The typicality inquiry asks whether a plaintiff's allegations share the same essential characteristics as the class. Here, Plaintiff's claims share the same essential characteristics as the claims of the class at large. Regardless of why her check bounced, Plaintiff claims that it lead to the

---

2. The Court is also not persuaded that Harshman's failure to display the Notice is a unique factual circumstance. Although Defendants submitted an affidavit stating that Re$ubmitIt receives and fulfills requests for copies of the Notice from merchants, the affidavit does not identify how many of those merchants are BankAmerica customers. *See* Affidavit of Michael A. Alvey [ECF No. 71–2]. The affidavit also states that if Re$ubmitIt learns that a mer-

chant will not display the Notice, it is Re$ubmitIt's policy to terminate a merchant from the Re$ubmitIt services. But there is no indication that this policy is followed. At this stage of the litigation, there is insufficient evidence for the Court to conclude that a majority of merchants find the "automatic enrollment letters" to be anything other than junk mail. Thus, the Court cannot conclude that Harshman's failure to display the Notice was atypical.

withdrawal of the NSF Fee. Regardless of whether she discussed the withdrawal directly with her bank, Plaintiff claims that the withdrawal was unauthorized. And, Plaintiff challenges both the contents of the Notice and the manner in which Defendants collected the NSF Fee. She claims she is not alone and that thousands of others have been subjected to Defendants' allegedly improper practices. As long as Plaintiff asserts "that Defendants committed the same wrongful acts in the same manner against all members of the class," she establishes "the necessary typicality." *In re AmeriFirst Sec. Litig.*, 139 F.R.D. 423, 429 (S.D.Fla.1991) (Hoeveler, J.).

### iv. *Adequacy*

 To satisfy the adequacy requirement, the named plaintiff and her counsel must demonstrate that they will adequately protect the interests of the putative class. *See Valley Drug Co.*, 350 F.3d at 1187. "The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between [Plaintiff or her lawyers] and the class; and (2) whether [she and her lawyers] will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir.2008). Defendants challenge both the adequacy of the class representative and the adequacy of counsel of record.

Defendants argue that Plaintiff's deposition testimony reveals her general unfamiliarity with the nature of her claims. "It is well-settled that it is not necessary for named class representatives to be knowledgeable, intelligent or have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action." *Powers v. Gov't Employees Ins. Co.*, 192 F.R.D. 313, 317–18 (S.D.Fla. 1998) (Highsmith, J.); *see also Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (certifying class where the named representative did not understand her complaint, had little knowledge of the nature of the lawsuit, and did not know the defendant's name).

 The record reveals that Plaintiff is playing an active role in the litigation. She appeared for a 9 hour deposition. *See* Muzu-co Dep. [ECF No. 73–1]. She produced documents. She appeared for mediation. *See* Mediation Report [ECF No. 107]. Though she may be uncertain as to the legal ramification of Defendants actions, or of the number of individuals who have been subject to Defendants policies, Plaintiff has offered her personal knowledge of the facts underlying her claims. The fact that Plaintiff is not well-versed in the intricacies of her case does not warrant a finding that she is inadequate to represent the class.

The Court also rejects Defendants' contention that Plaintiff has engaged in "wrongful and morally suspect conduct in fraudulent real estate transactions." Plaintiff's deposition transcript reveals that she became involved in an illegitimate business transaction and, when she figured out that the transaction was not legitimate, she reported it to appropriate authorities. *See* Muzuco Dep. [ECF No. 73–1]. Plaintiff has also been involved in legal disputes resulting from this real estate transaction. Under these facts, Plaintiff's financial and legal trouble does not render her of questionable character. There is no requirement that a plaintiff be the best of all possible plaintiffs, only that she adequately represents the class. The Court finds Plaintiff adequate.

 Defendants have also challenged the adequacy of Plaintiff's counsel. "Counsel will be deemed adequate if they are shown to be qualified, adequately financed, and possess sufficient experience in the subject matter of the class action." *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 651 (S.D.Fla.2010) (Lenard, J.). Defendants do not challenge counsel's qualifications, experience, and ability to prosecute this class action. Instead, Defendants challenge the fee arrangement between proposed class counsel and Harshman. In raising this particular issue, Defendants have not cited to any supporting authority. The Court notes that Harshman has not filed an appearance in this matter, and is not seeking to be appointed as class counsel. The Court declines to find counsel inadequate based on the fee sharing agreement with Harsman. However, the Court will require Plaintiff's counsel to provide the Court with all agreements concern-

ing attorney's fees in this matter, including the fee-sharing agreement with Harshman. Fed.R.Civ.P. 23(g)(C). Upon review of these agreements, the Court may modify this Order to include provisions about the award of attorney's fee in this action. Fed.R.Civ.P. 23(g)(D).

As required by Rule 23(g), the Court has considered: (1) the work class counsel has done in identifying or investigating potential claims in this action; (2) class counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in this action; (3) class counsel's knowledge of the applicable law; and (4) the time and resources class counsel have committed to representing the class. Fed. R.Civ.P. 23(g). Plaintiff has retained competent counsel to represent her and the class. Class counsel here regularly engages in consumer class action litigation and other complex litigation similar to the present action. Moreover, class counsel has vigorously and competently represented the class members' interests in this action. *See In re Checking Account Overdraft Litig.*, 2012 WL 4174502, at *2 (S.D.Fla. Sept. 19, 2012) (King, J.).

There appear to be no conflicts between Plaintiff and the putative class members or between Plaintiff's counsel and the putative class members. The Court finds that both Plaintiff and her counsel will adequately represent the class in this case.

## B. *Rule 23(b) Requirements*

"In addition to establishing the Rule 23(a) requirements, a plaintiff must also establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b)." *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir.2012); *see also Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir.2000). In this case, Plaintiff moves under Rule 23(b)(3), which "permits class certification if 'the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy.'" *Little*, 691 F.3d at 1304 (quoting Fed.R.Civ.P. 23(b)(3) (emphasis original)). These are commonly referred

to as the predominance and superiority requirements. *See Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 496 (N.D.Ga. 2006).

### i. *Predominance*

To satisfy the predominance requirement, the named plaintiff must establish that the issues subject to generalized proof in the class action, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir.1997). Thus, predominance requires not just the presence of common issues, but also that those common issues actually outweigh any individualized issues in the litigation. In this way, predominance is "far more demanding" than Rule 23(a)'s commonality requirement. *See id.* at 1005 (citation omitted). "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, —— U.S. ——, 131 S.Ct. 2179, 2184, 180 L.Ed.2d 24 (2011).

### a. Arguments Affecting All Counts

Defendants argue extensively that class certification is not appropriate for any of Plaintiff's claims because each will involve highly individualized issues, including: (1) whether each merchant displayed the Notice; (2) how the Notice was displayed; (3) whether each putative class member saw the Notice; and (4) whether each putative class member authorized the withdrawal. The Court disagrees. As alleged by the Plaintiff, this case is about the Defendants' scheme to withdraw funds directly from class members' bank accounts by writing an unauthorized check purporting to be from the class member. Instead of depositing the fee into the account of the payee identified on the unauthorized check, Defendants would share that fee amongst themselves. Defendants' alleged business operations were organized and implemented uniformly to BankAtlantic customers enrolled in Re$ubmitIt's program. Plaintiff's claim is that the Notice, even if properly displayed, is contrary to law. Plain-

tiff also claims that even if the Notice properly authorized a fee, the manner in which Defendants collected and shared that fee is improper.

Defendants point out that courts have found class certification inappropriate in similar circumstances. In *Harrel v. CheckA-GAIN, LLC,* for example, the court denied class certification for an FDCPA claim because each putative class member would have to show that there was no point-of-sale notice or agreement authorizing the defendant to a fee to become a member of the class. *Harrell v. CheckAGAIN, LLC,* 248 F.R.D. 199, 207 (S.D.Miss.2006). Similarly, in *Polo v. Goodings Supermarkets, Inc.,* the court denied class certification for an EFTA claim that defendants' ATM charged a fee that exceeded the amount listed on a posted fee notice because there was no uniform notice or policy that applied to all of the ATM transactions. *Polo v. Goodings Supermarkets, Inc.,* 232 F.R.D. 399, 406–07 (M.D.Fla. 2004).

This case does not suffer from the same flaws in *Harrell* and *Polo.* Here, Defendants rely on a uniform Notice to obtain authorization from all putative class members. Resolution of issues involving the contents of the Notice and Defendants' collection methods would apply equally and objectively to all of the potential plaintiffs.

Defendants also argue that variances in state law create individualized questions of law that overwhelm any common issues. Under the class definition Plaintiff originally sought to certify, consisting of all persons from whom Re$ubmitIt collected an NSF Fee, this might have been the case. However, Plaintiffs agreed to narrow the class to only those persons from whom Re$ubmitIt collected an NSF Fee whose returned checks were deposited in an account with BankAtlantic. Because BankAtlantic operates only in Florida, this limits the putative class to those whose transactions occurred in Florida and are subject to Florida law. The Court finds that the problems that arise in multi-state class actions are not present here.

Having rejected Defendants' main arguments against class certification, the Court turns to the individual claims asserted by Plaintiff.

### b. FDCPA

As to the FDCPA class, predominance is satisfied here. In order to prevail on an FDCPA claim, Plaintiff will need to show: (1) that Plaintiff was the object of a collection activity arising from consumer debt; (2) that Defendants are debt collectors as defined by the FDCPA; and (3) that Defendants engaged in an act or omission prohibited by the FDCPA. *Erickson v. General Elec. Co.,* 854 F.Supp.2d 1178, 1182 (M.D.Fla.2012). Plaintiff claims that Defendants violated two provisions of the FDCPA. Section 1692c(b) of the FDCPA prohibits debt collectors from communicating with third parties in connection with collecting the debt. 15 U.S.C. § 1692c(b). Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," including collecting a fee unless "such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f.

Plaintiff claims that the manner in which Re$ubmitIt collected the NSF Fee is unfair and unconscionable: Re$ubmitIt created a check that appeared to be from Plaintiff and made payable to Harshman. Re$ubmitIt claimed that the check was authorized, and the amount was not paid to Harshman, but was split between Re$ubmitIt and BankAtlantic. Whether this practice—creating a check that appears to be from the putative class member, claiming that the check was pre-authorized, making the check payable to the merchant to whom the putative class member wrote the initial returned check, and then taking that fee instead of providing the funds to the payee identified on the check—violates the FDCPA can be resolved through generalized proof.

Additional questions subject to resolution through generalized proof include:
- whether Defendants are debt collectors under the FDCPA;
- whether an unauthorized communication with a class member's bank is a violation of the FDCPA;

- Whether the Notice is legally adequate even though it did not include the amount of the NSF Fee;
- whether the Notice inaccurately represented that an NSF Fee was authorized under Florida law;
- whether the notice is sufficient to authorize the taking of an NSF Fee; and
- whether Re$ubmitIt was acting as BankAtlantic's agent in their collection efforts.

These overriding questions are subject to common resolution, and establish predominance.

The Court does not believe that it will need to engage in significant individual inquiries about the Notice received by each class member. And, while there may be individualized evidence concerning whether Defendants in fact contacted each class members' bank, the Court does not believe that this defeats predominance. As the Court has already explained, there are numerous common questions of law, and the resolution of these questions will have a direct impact on every class member's effort to establish liability. *See Collins v. Erin Capital Mgmt., LLC,* 290 F.R.D. 689, 698–99, 2013 WL 1164026, at *9 (S.D.Fla. Mar. 21, 2013) (Altonaga, J.). This is sufficient to satisfy predominance.

Defendants correctly note that both the FDCPA and EFTA apply only to consumers, and that each class member will need to demonstrate that the transaction involved a consumer item. Defendants have assured the Court that this can be determined by looking at the face of the returned check, and the Court finds that this threshold determination does not defeat predominance. *See id.* at 698–700.

### c. EFTA

■ The Court also finds predominance satisfied under Plaintiff's EFTA claim. While the EFTA permits merchants to collect NSF Fees, it requires that the merchant disclose the amount of the fee or the way the fee will be calculated. 12 C.F.R. § 205.3(b)(3)(i). Here, the key question is whether the Notice is adequate, as a matter of law, under the EFTA. This issue predominates over individual issues.

Defendants claim that the Court will need to engage in highly individualized analyses to determine whether each putative class member authorized the NSF Fee. As explained above, the issue of authorization does not, in this case, present an individualized issue because Re$ubmitIt's authorization is dependent upon the validity of its Notice.

Defendants also argue that other state or federal laws may regulate a debt collector's authority to collect a fee for a returned check. Defendants, however, have put forth no evidence to suggest that they relied on anything other than the Notice to establish authorization for the NSF Fee. Common questions of whether the NSF Fee is proper under Florida and federal laws predominate.

### d. Conversion

■ Under Florida law, conversion is an "unauthorized act which deprives another of his property permanently or for an indefinite time." *Mayo v. Allen,* 973 So.2d 1257, 1258 (Fla.Dist.Ct.App.2008). Common questions of law and fact predominate here because the issue of authorization depends upon the adequacy of Defendants' Notice. Thus, contrary to Defendants' argument, the issue of individual authorization does not predominate over the questions common to the class.

Defendants claim that because each class member would be required to prove damages, the Court would need to determine whether each fee was refunded by Defendants or by a third party. This, Defendants argue, defeats predominance. Of the 11,461 checks BankAtlantic assigned to Re$ubmitIt, Re$ubmitIt provided refunds on only 70 occasions. *See* Defendants' Answers to the Court's Questions [ECF No. 108]. And, it is not clear that any reimbursements by a third-party are relevant to damages. The Court does not believe that addressing damages for 70 instances defeats predominance; whether these class members sustained damages for a temporary deprivation will itself be subject to common resolution.

### e. Unjust Enrichment

■ The Eleventh Circuit has cautioned that unjust enrichment claims are rarely suitable for class-wide resolution. *Vega*, 564 F.3d at 1274. "While this is undoubtedly true in most cases, the Eleventh Circuit's underlying concern is that unjust enrichment claims typically require individualized inquiries into the equities of each class member's interaction with each defendant." *Priceline.com, Inc.*, 265 F.R.D. at 671. In this vein, Defendants argue that the Court will necessarily have to delve into whether and how the Notice was received by each putative class member.

■ Here, however, Defendants' business operations are the same to all members of the putative class. The Plaintiff's claim is that the manner in which Defendants collected the NSF Fees is improper. Predominance is satisfied here because the NSF Fees were collected in the same manner for all class members. Where, as here, highly individualized issues are absent, class certification for an unjust enrichment claim is appropriate. *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 674 (S.D.Fla.2012) (Scola, J.); *Priceline.com, Inc.*, 265 F.R.D. at 671; *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697–98 (S.D.Fla.2004) (Seitz, J.); *see also James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm., Inc.*, 275 F.R.D. 638, 647 (M.D.Fla.2011); *Smith v. Georgia Energy USA, LLC*, 259 F.R.D. 684, 688–90 (S.D.Ga.2009); *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 581 (M.D.Fla.2006).

### f. Civil Conspiracy

■ To prove conspiracy, Plaintiff will need to demonstrate: (1) an agreement between the Defendants; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damages. *Five for Entm't S.A. v. Rodriguez*, 2013 WL 4433420, at *13 (S.D.Fla. Aug. 15, 2013) (Seitz, J.). This case involves an alleged conspiracy between BankAtlantic and Re$ubmitIt to withdraw NSF Fees from class members' bank accounts. Plaintiff claims that Defendants' general business model, where BankAtlantic customers are automatically enrolled in the Re$ubmitIt program, is improper. This business arrangement, according to Plaintiff, was for the purpose of collecting NSF Fees in an unlawful manner. Common questions, including whether the manner in which Defendants collected NSF Fees is unlawful, predominate.

Defendants argue that because Plaintiff seeks certification of a class of all financial institutions that Re$ubmitIt partners with, the Court will need to delve into various state law on conspiracy and Re$ubmitIt's interactions with these various financial institutions. The Court finds that Defendants concerns are adequately addressed by the class definition which limits the class to those whose NSF Checks were deposited in an account with BankAtlantic.

### ii. *Superiority*

■ The focus of superiority analysis is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *See Sacred Heart Health Sys.*, 601 F.3d at 1183–84 (citation omitted); *Mohawk Indus., Inc.*, 568 F.3d at 1358. "[T]he predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims, both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability[.]" *Sacred Heart Health Sys.*, 601 F.3d at 1184 (internal citations and alterations omitted). In deciding superiority, the district court must consider at least some of the factors set forth in Rule 23(b)(3), including: "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." *See Vega*, 564 F.3d at 1278 n. 19 ("[A] complete failure to address these factors or any other pertinent

consideration when conducting a Rule 23(b)(3) inquiry is an abuse of discretion").

██ The Court finds that resolving the issues raised by the Plaintiff in a class action would be superior to other available methods to fairly and efficiently resolve this controversy. As explained above, common questions of law and fact predominate over any individualized issues. In addition, the Court finds that the "large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating" Plaintiffs' claims under the FDCPA and EFTA. *See Hicks v. Client Servs., Inc.,* 2008 WL 5479111, at *10. Finally, as all the transactions occurred in Florida, litigating this case in a Florida federal district court makes sense. Taken together, these considerations show that the class action vehicle is superior in this case.

### CONCLUSION

For the reasons explained in this Order, it is **ORDERED and ADJUDGED** that the Plaintiff's Motion for Class Certification [ECF No. 59] is **GRANTED.**

The Court hereby certifies the following class under the FDCPA:

(i) all persons from whom Re$ubmitIt collected an NSF Fee (ii) in an attempt to collect a debt incurred for personal, family, or household purposes, and (iii) whose NSF Checks were deposited in an account with BankAtlantic (iv) during the one year period prior to the filing of the lawsuit in this action through the date of certification.

The Court hereby certifies the following class under the EFTA:

(i) all consumers (ii) whose NSF Checks were deposited in an account with BankAtlantic and (iii) from whom Re$ubmitIt collected an NSF Fee (iv) through an electronic check drawn on the consumer's account (v) during the one year period prior to the filing of the lawsuit in this action through the date of certification.

The Court hereby certifies the following class for the Plaintiff's common law claims:

(i) all persons from whom Re$ubmitIt collected an NSF Fee (ii) whose NSF Checks were deposited in an account with BankAtlantic (iii) during the four year period prior to the filing of the lawsuit in this action through the date of certification.

Having considered the factors enumerated in Rule 23(g), it is **FURTHER ORDERED** that Shapiro Haber & Urmy LLP, Kelley Uustal, and Liggio Benrubi are appointed as co-lead class counsel. *Within fourteen days of this Order,* Plaintiff's class counsel shall submit to the Court a proposed schedule for providing the class members the requisite notice, as outlined in Rule 23(c)(2). *Within fourteen days of this Order,* Plaintiff's class counsel shall also provide the Court with all agreements *concerning* attorney's fees in this matter, as detailed in this Order.

Finally, in finding class certification to be warranted, the Court considered the materials submitted in Defendant's Answers to the Court's Questions [ECF No. 108]. Therefore, the Court **DENIES** Plaintiff's Motion to Strike "Defendants' Answers to the Court's Questions" [ECF No. 109].