CANADY, C.J.
In this case we consider the constitutionality of the Alachua County Lien Law, chapter 88-539, Laws of Florida (Lien Law), and the Alachua County Hospital Lien Ordinance, Alachua County Code sections 262.20-262.25 (1997) (Ordinance), both of which establish certain lien rights for charitable hospitals in Alachua County. We have for review the decision of the First District Court of Appeal in Mercury Insurance Co. of Florida v. Shands Teaching Hospital & Clinics, Inc., 21 So.3d 38 (Fla. 1st DCA 2009), which reversed the trial court’s judgment for Shands Teaching Hospital and Clinics, Inc. (Shands) and held that the Lien Law and Ordinance were unconstitutional under the prohibition on “special law[s]” pertaining to “liens based on private contracts” contained in article III, section 11(a)(9) of the Florida Constitution. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
For the reasons set forth below, we conclude that the Lien Law is unconstitutional under article III, section 11(a)(9) of the Florida Constitution. We hold, however, that the Ordinance is not unconstitutional and that the First District should have upheld the trial court’s judgment on the basis of the Ordinance. In addressing a cross-appeal presented by Mercury Insurance Company of Florida (Mercury), we hold that the trial court properly limited Shands’ damages to $10,000 and properly awarded Shands attorney fees. We reverse the First District’s decision, and we remand the case for proceedings consistent with this opinion.
I. BACKGROUND
Krystal Price was struck by a vehicle insured by Mercury. As a result of this accident, Ms. Price received treatment at Shands valued at $38,418.20. Pursuant to the Lien Law and the Ordinance, Shands perfected and recorded a lien on Ms. Price’s potential causes of action arising from her injury and any judgments or settlements entered by virtue of such causes of action. Shands sent a copy of the lien to Ms. Price on the date the lien was recorded.
Mercury’s insured carried a policy with bodily injury liability coverage in the amount of $10,000 and Personal Injury Protection (PIP) coverage in the amount of $10,000. After Shands’ lien had been recorded, Mercury tendered to Ms. Price $10,000, the full amount of bodily injury liability coverage and accepted Ms. Price’s signed release. Mercury did not join Shands in the release, nor did Mercury satisfy Shands’ lien prior to obtaining the release.
After the settlement between Mercury and Ms. Price, Shands sent a copy of the hospital lien to Mercury. Subsequently, Mercury paid Shands $10,000, the remaining coverage available under the policy. Shands then filed suit against Mercury to recover the remaining $28,418.20 of Ms. Price’s medical expenses, alleging that Mercury had impaired Shands’ lien. Mercury served a settlement proposal on Shands pursuant to section 768.79, Florida Statutes (2006), offering to pay Shands $17,700 as final satisfaction of Shands’ lien. Shands did not accept the settlement offer.
*208 The trial court denied cross-motions for summary judgment, rejecting Mercury’s arguments that the Lien Law violated article III, sections 11(a)(9) and (12) of the Florida Constitution; the impairment of contracts clauses found in article I, section 10 of the United States Constitution and article I, section 10 of the Florida Constitution; and Mercury’s substantive due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 9, of the Florida Constitution. Ultimately, the trial court determined that Mercury had impaired Shands’ lien and that but for the impairment, Ms. Price’s underlying cause of action would have resulted in a judgment far greater than the cost of her treatment. The trial court also found, however, that all damages in excess of $10,000 were “nominal damage[s]” because the “judgment would have been uncollectible and of no commercial value.” Shands Teaching Hosp. & Clinics, Inc. v. Mercury Ins. Co. of Fla., No. 01-2006-CA-3631 (Fla. 8th Cir. Ct. final judgment filed Feb. 7, 2008) (Final Judgment). Therefore, the trial court limited Shands’ damages to $10,000, the amount of the liability coverage that Mercury had paid to Ms. Price, as well as attorney fees and costs.
Mercury appealed the judgment, asserting that the Lien Law and Ordinance violated article III, sections 11(a)(9) and ll(a)(12) of the Florida Constitution, as well as Mercury’s substantive due process rights under the Florida and United States Constitutions. Mercury also argued that if the Lien Law and Ordinance were upheld, any damages awarded to Shands must be limited to the $10,000 amount of the settlement between Mercury and Ms. Price or, at most, the $20,000 policy limits. Finally, Mercury appealed the award of attorney fees to Shands and claimed entitlement to attorney fees and costs pursuant to its settlement proposal. The First District reversed the trial court’s judgment, holding that the Lien Law and Ordinance were unconstitutional under article III, section 11(a)(9) of the Florida Constitution. Accordingly, the First District remanded the case with instructions to enter judgment in favor of Mercury and to consider whether Mercury was entitled to attorney fees pursuant to the settlement proposal. Mercury Ins., 21 So.3d at 39.
Shands now appeals the First District’s decision, arguing that the Lien Law and Ordinance are constitutional under article III, section 11(a)(9). Shands further contends that it should receive damages for the full reasonable amount of Ms. Price’s treatment and attorney fees as the prevailing party in this case. Mercury cross-appeals, arguing that the Lien Law and Ordinance also violate both the prohibition on special laws granting a privilege to private corporations in article III, section ll(a)(12) of the Florida Constitution, and Mercury’s substantive due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 9 of the Florida Constitution. Mercury also argues on cross-appeal that if this Court reverses the First District’s decision, Shands’ damages should be limited to the $10,000 settlement amount that Mercury paid Ms. Price.
II. ANALYSIS
In the analysis set forth below, we first explain that we affirm the First District’s conclusion that the Lien Law is unconstitutional because it is a proscribed “special law” pertaining to “liens based on private contracts” under article III, section 11(a)(9) of the Florida Constitution. We then explain that the Ordinance — which is not a “special law” — is not unconstitutional and that the First District erred in failing to uphold the trial court’s judgment on the basis of the Ordinance. Finally, we ex *209 plain that the trial court properly limited Shands’ damages to $10,000 and properly awarded attorney fees to Shands.
“The determination of a statute’s constitutionality and the interpretation of a constitutional provision are both questions of law reviewed de novo by this Court.” Fla. Dep’t of Revenue v. City of Gainesville, 918 So.2d 250, 256 (Fla.2005). “While we review decisions striking state statutes de novo, we are obligated to accord legislative acts a presumption of constitutionality and to construe challenged legislation to effect a constitutional outcome whenever possible.” Id. (quoting Fla. Dep’t of Revenue v. Howard, 916 So.2d 640 (Fla.2005)).
The relevant portion of the Lien Law and the corresponding portion of the Ordinance provide:
Any nonprofit corporation operating a hospital that has qualified pursuant to s. 501(c)(3) of the Internal Revenue Code as a charitable hospital, located in Ala-chua County, shall be entitled to a lien for all reasonable charges for hospital care, treatment, and maintenance of ill or injured persons upon any and all causes of action, suits, claims, counterclaims, and demands accruing to such persons or the legal representatives of such persons, and upon all judgments, settlements, and settlement agreements rendered or entered into by virtue thereof, on account of illness or injuries giving rise to such causes of action, suits, claims, counterclaims, demands, judgment, settlements, or settlement agreements and which necessitate or shall have necessitated such hospital care, treatment and maintenance.
[[Image here]]
... No release or satisfaction of any action, suit, claim, counterclaim, demand, judgment, settlement, or settlement agreement, or of any of them, shall be valid or effectual as against such lien unless such lienholder shall join therein or execute a release of such lien. Any acceptance of a release or satisfaction of any such cause of action, suit, claim, counterclaim, demand, or judgment and any settlement of any of the foregoing in the absence of a release of satisfaction of the lien referred to in this act shall prima facie constitute an impairment of such lien and the lienholder shall be entitled to an action at law for damages on account of such impairment, and in such action may recover from the one accepting such release or satisfaction or making such settlement the reasonable cost of such hospital care, treatment, and maintenance. Satisfaction of any judgment rendered in favor of the lien-holder in any such action shall operate as a satisfaction of the lien. Any action by the lienholder shall be brought in the court having jurisdiction of the amount of the lienholder’s claim and may be brought and maintained in the county wherein the lienholder has his, its, or their residence or place of business. If the lienholder shall prevail in such action, the lienholder shall be entitled to recover from the defendant, in addition to costs otherwise allowed by law, all reasonable attorney’s fees and expenses incident to the matter.
Ch. 88-539, §§ 1, 4, Laws of Fla.; see also Alachua Cnty.Code §§ 262.20, 262.23.
Article III, section 11(a)(9), Florida Constitution, states:
(a) There shall be no special law or general law of local application pertaining to:
[[Image here]]
(9) creation, enforcement, extension or impairment of liens based on private contracts, or fixing of interest rates on private contracts.
*210 Here, the First District correctly held that the Lien Law “is a special law which creates a lien based on a private contract between Shands and its patient,” and is thus unconstitutional under article III, section 11(a)(9) of the Florida Constitution. Mercury Ins., 21 So.3d at 39. Shands raises multiple challenges to the First District’s holding, none of which are meritorious.
Shands first asserts that the Lien Law does not create a true lien but instead creates a cause of action by which hospitals can recover from third parties against whom the hospital would not otherwise be able to recover. This argument is without merit. The distinction on which Shands relies is without any basis in the law.
In construing a statute, we should give effect to legislative intent, which is discovered primarily through the plain language of the statute. BellSouth Telecomms., Inc. v. Meeks, 863 So.2d 287, 289 (Fla.2003). Here, the Lien Law clearly states that any qualifying hospital
shall be entitled to a lien for all reasonable charges for hospital care, treatment, and maintenance of ill or injured persons upon any and all causes of action, suits, claims, counterclaims, and demands accruing to such persons or the legal representatives of such persons, and upon all judgments, settlements, and settlement agreements rendered or entered into by virtue thereof, on account of illness or injuries giving rise to such causes of action, suits, claims, counterclaims, demands, judgment, settlements, or settlement agreements and which necessitate or shall have necessitated such hospital care, treatment and maintenance.
Ch. 88-539, § 1, at 284-85, Laws of Fla. The Lien Law explicitly creates a lien and refers to the “lien” and “lienholder” throughout. There is no basis for concluding that “lien” has a different meaning in the Lien Law than it has in article III, section 11(a)(9) of the Florida Constitution. Thus, the plain language of the Lien Law refutes Shands’ argument.
Shands also argues that its lien was created by the Lien Law and is thus a statutory lien, not a lien “based on” a private contract. This argument is also without merit. Shands fails to recognize— as the text of section 11(a)(9) plainly requires — that liens created by statute nonetheless may be based on a private contract. Adopting Shands’ argument would effectively read the portion of article III, section 11(a)(9), relating to the “creation” of liens out of existence or place an unwarranted and arbitrary restriction on its scope.
Finally, Shands contends that its relationship with Ms. Price resulted in a quasi-contract and that article III, section 11(a)(9), does not apply to liens based on quasi-contracts. But Shands did not properly present this argument to the First District. We therefore do not address it.
We conclude that the First District erred, however, in holding the Ordinance to be unconstitutional. The First District concluded that the Ordinance, being “enacted pursuant” to the Lien Law, is also unconstitutional. Mercury Ins., 21 So.3d at 39. An ordinance enacted by authority of an unconstitutional law is void. See State ex rel. Numen v. Greer, 88 Fla. 249, 102 So. 739, 743 (1924) (holding that a legislative enactment declared unconstitutional is rendered inoperative ab initio, “and bonds issued thereunder are void because issued without authority of law”). But the Ordinance here was not “enacted pursuant” to the Lien Law. The fact that the Ordinance mirrors the language of the Lien Law and includes references to the corresponding sections of the Lien Law *211 does not support the conclusion that the Ordinance was enacted by authority of the Lien Law. The Ordinance does not state that it was enacted pursuant to the Lien Law, and the Lien Law does not contain a grant of power authorizing Alachua County to enact an ordinance. The Ordinance is therefore not unconstitutional by virtue of the Lien Law’s invalidity.
Mercury argues that the Ordinance is nevertheless unconstitutional in light of the prohibition in article III, section 11, on special laws pertaining to certain subjects. Mercury contends that “[t]he piecemeal enactment of legislation concerning these [subjects] by local government goes against the overriding purpose for the constitutional prohibition.” Appellee/Cross-Appellant’s Answer Brief & Initial Brief on Cross-Appeal at 35. Mercury’s argument is premised on the constitutional rule that a charter county cannot enact ordinances that are inconsistent with a general or special law. See art. VIII, § 1(g), Fla. Const. (“Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors.”). Mercury’s argument is without merit. We have previously held that “a county ordinance can be inconsistent with state law and therefore unconstitutional” under article VIII, section 1(g), only if it directly conflicts with a state statute or if the State has preempted the subject area in which field the ordinance is passed. Phantom of Brevard, Inc. v. Brevard Cnty., 3 So.3d 309, 314 (Fla.2008). Here, neither fatal flaw is present.
The Ordinance does not directly conflict with any state statute. The only statute relating to hospital liens for Ala-chua County is the Lien Law, which we conclude is unconstitutional, and thus has no effect. Nor does the Ordinance occupy a field preempted by the Legislature. Courts should be reluctant to “preclude a local elected governing body from exercising its local powers” by finding preemption by implication “in the absence of an explicit legislative directive.” Phantom of Clearwater, Inc. v. Pinellas Cnty., 894 So.2d 1011, 1019 (Fla. 2nd DCA 2005) (citing Tallahassee Mem’l Reg’l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So.2d 826 (Fla. 1st DCA 1996)). Thus, implied preemption should be found only “if the senior legislative body’s scheme of regulation of the subject is pervasive and if further regulation of the subject by the junior legislative body would present a danger of conflict with that pervasive regulatory scheme.” Tribune Co. v. Cannella, 458 So.2d at 1075, 1077 (Fla.1984) (quoting Tribune Co. v. Cannella, 438 So.2d 516, 525-26 (Fla. 2d DCA 1983) (Lehan, J., dissenting)). There is no such pervasive regulatory scheme enacted by the Legislature with respect to hospital liens. Ala-chua County therefore validly exercised its broad powers of local self-government in enacting the Ordinance.
Nor do we find merit in Mercury’s argument to the extent that it challenges the validity of the Ordinance under article III, section 11(a)(9), or article III, section ll(a)(12) of the Florida Constitution. Article III, section 11(a) of the Florida Constitution states that “[t]here shall be no special law or general law of local application pertaining to” the enumerated subjects. Because section 11(a) forbids only the Legislature from enacting certain special laws and general laws of local application, a county ordinance cannot violate that provision of the Florida Constitution. See Brooks v. Town of Orange Park, 286 So.2d 593, 596 (Fla. 1st DCA 1973) (“[T]he special or general laws of local application referred to in [a provision of article III, section 11(a) ] apply to laws enacted by the state legislature and not to ordinances *212 adopted by the various municipalities of the state.”).
Additionally, the Ordinance does not violate Mercury’s substantive due process rights under the Florida and United States Constitutions. When a law challenged on substantive due process grounds does not infringe upon a fundamental right, we must review the law under the rational basis test, which requires that the law bear “a reasonable relation to a permissible legislative objective and is not discriminatory, arbitrary or oppressive.” Lasky v. State Farm Ins. Co., 296 So.2d 9, 15 (Fla.1974). Here, Mercury contends that the Ordinance violates substantive due process as applied by the trial court. Specifically, Mercury claims that there is no rational basis for “shifting] the financial burden from the hospital to the insurance carrier beyond” the amount that the insurance company paid to the injured party or, at most, the total amount of the insurance policy. Appellee/Cross-Appel-lant’s Answer Brief & Initial Brief on Cross-Appeal at 56. This argument is rendered moot, however, by our conclusion—which we explain hereafter—that the Ordinance does not allow for such recovery here.
Given the constitutionality of the Ordinance, the First District erred in reversing the trial court’s judgment for Shands. According to the “longstanding principle of appellate law” known as the “tipsy coachman” doctrine, an appellate court should affirm a trial court that “reaches the right result, but for the wrong reasons” if there is “support for the alternative theory or principle of law in the record before the trial court.” Robertson v. State, 829 So.2d 901, 906-07 (Fla.2002). Therefore, “if a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record.” Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999).
Here, although the trial court based its judgment solely on the Lien Law, the record supports the trial court’s judgment under the alternative theory that Mercury is liable to Shands pursuant to the Ordinance. The parties litigated the constitutionality of the Ordinance in the trial court after Mercury challenged the constitutionality of the Lien Law and Ordinance at the summary judgment stage of litigation. Because the record supports the trial court’s judgment on this alternative theory, we conclude that the trial court properly ruled in favor of Shands.
As mentioned above, we also conclude that the trial court properly limited Shands’ damages to $10,000. The trial court found that Mercury had damaged Shands in the amount of $10,000 by virtue of its settlement with Ms. Price in that amount. The trial court also found that Mercury’s settlement with Ms. Price extinguished Shands’ lien on Ms. Price’s cause of action against Mercury’s insured for damages over and above the $10,000 settlement—which the trial court found “by the greater weight of the evidence” would have resulted in a judgment in excess of the total policy limits. However, the trial court found that any damages awarded in that cause of action beyond the $10,000 liability policy limits would have been “nominal” because “under the circumstances presented, said judgment would have been uncollectible and of no commercial value.” Final Judgment at 2. Mercury argues that if this Court reverses the First District’s decision, this Court should affirm the trial court’s ruling limiting Shands’ damages to the collectible value of any lost judgment against Mercury’s insured. We agree.
*213 The Ordinance states that upon impairment of a lien, the lienholder “shall be entitled to an action at law for damages on account of such impairment.” Alachua Cnty.Code § 262.28. “On account of’ is defined as “by reason of’ or “because of.” Webster’s Third New Int’l Dictionary 13 (1981) (unabridged). Shands’ claim against Mercury for Mercury’s impairment of Shands’ lien is therefore limited to the damages Shands suffered because of Mercury’s impairment. As the trial court found, any judgment that Ms. Price might have received against Mercury’s insured would have been uncollectible. Because Shands’ lien on an uncollectable judgment would not have resulted in additional recovery, Shands would still not have collected more than the policy limits absent Mercury’s impairment of the lien. Thus, because the total policy limits were $20,000 and Mercury had already paid Shands the $10,000 PIP limits, Shands’ damages “on account of’ Mercury’s impairment are limited to the $10,000 in liability coverage that Mercury paid to Ms. Price.
Finally, we conclude that the trial court properly awarded attorney fees to Shands and in doing so properly denied Mercury’s claim for attorney fees based on its settlement proposal. Although the trial court improperly awarded attorney fees to Shands based on the Lien Law, the award should nonetheless be upheld pursuant to the Ordinance, which states:
If the lienholder shall prevail in such action, the lienholder shall be entitled to recover from the defendant, in addition to costs otherwise allowed by law, all reasonable attorney’s fees and expenses incident to the matter.
Alachua Cnty.Code § 262.23.
The standard of review for an award of prevailing party attorney fees is abuse of discretion. See DiStefano Constr., Inc. v. Fid. & Deposit Co. of Md., 597 So.2d 248, 250 (Fla.1992). In examining the prevailing party attorney fee provisions in lien laws, we have held that “trial courts are required to apply the ‘significant issues’ test of [Prosperi v. Code, Inc., 626 So.2d 1360 (Fla.1993) ] ... even when the lienor obtains a judgment on the lien.” Trytek v. Gale Indus., Inc., 3 So.3d 1194, 1196 (Fla.2009) (quashing the holding of the Fifth District Court of Appeal that trial courts must grant lienholder “prevailing party” attorney fees if lienholder recovers any net judgment on lien claim). Thus, the fact that Shands obtained a net judgment “is a significant factor but [does not necessarily] control the determination of who should be considered the prevailing party.” See Prosperi, 626 So.2d at 1363.
We conclude that the trial court did not abuse its discretion in awarding Shands attorney fees as the prevailing party. The trial court applied the correct “significant issues” test, as opposed to the “net judgment” test, and found that Shands had
indeed successfully recovered monetary judgment against [Mercury] and has prevailed on significant issues of law including, but not limited to: 1) the validity of the hospital lien law despite constitutional challenge; 2) the disputed issues of liability and damages regarding the underlying bodily injury cause of action; 3) the nature, scope and extent of [Shands’] lien ... and 4) obtaining a resolution not only favorable with respect to the case at hand but favorable in establishing a basis upon which to inform the parties’ continuing dealings together in the area of settlement of claims involving hospital liens.
Final Judgment at 2-3. Despite Mercury’s contention that there was only one significant issue in the case, the record supports the trial court’s finding that *214 Shands prevailed with respect to several significant issues.
Moreover, the trial court properly-considered and denied Mercury’s claim for attorney fees pursuant to its settlement offer. Section 768.79(1), Florida Statutes (2006), provides in relevant part:
(1) In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney’s fees ... from the date of filing of the offer if the judgment .. \ obtained by the plaintiff is at least 25 percent less than such offer....
In determining the amount of the plaintiffs “judgment obtained,” courts should include not only “the amount of the net judgment entered,” but also “any postoffer collateral source payments received or due as of the date of the judgment, plus any postoffer settlement amounts by which the verdict was reduced.” § 768.79(6), Fla. Stat. (2006). We have interpreted the “judgment obtained” under section 768.79 to include “the total net judgment, which includes the plaintiffs taxable costs up to the date of the offer and, where applicable, the plaintiffs attorneys’ fees up to the date of the offer.” White v. Steak & Ale of Fla., Inc., 816 So.2d 546, 551 (Fla.2002).
Before awarding attorney fees to Shands, the trial court properly “determine[d] the effect of [Mercury’s] § 768.79 proposal for settlement.” Final Judgment at 3. The trial court applied our formula set forth in Steak & Ale, “adding to the amount of damages recovered the attorney’s fees, costs and pre-judgment interest accrued up to the date of the proposal for settlement.” Id. at 4. The trial court determined that based on Mercury’s offer of $17,700, Shands’ “judgment obtained” must not have exceeded $13,275 in order for Mercury to be awarded attorney fees. Id. The trial court calculated Shands’ preoffer interest and attorney fees, which, when added to the $10,000 in damages, equaled $18,050.09. Even without accounting for Shands’ preoffer costs, “[t]his amount not only exceeded] the ‘target’ amount of $13,275.00, but exceed[ed] the total amount of the offer.” Id. Thus, the trial court properly determined that Mercury was not entitled to attorney fees based on its settlement offer and properly awarded attorney fees to Shands as the prevailing party.
III. CONCLUSION
For the reasons explained above, we approve the First District’s ruling that the Lien Law is unconstitutional under article III, section 11(a)(9) of the Florida Constitution. We conclude, however, that the Ordinance is constitutional, and that the trial court’s judgment should be upheld on the basis of the Ordinance pursuant to the “tipsy coachman” doctrine. We also conclude that the trial court correctly limited the damages awarded to Shands and properly awarded attorney fees to Shands.
Accordingly, we quash the First District’s decision and remand for proceedings consistent with this opinion.
It is so ordered.
PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.