PADOVANO, J.,
dissenting.
The majority and concurring opinions offer a variety of reasons for striking down the University’s regulation. These opinions pursue differing legal theories but they all arrive at the same conclusion: that a state university is powerless to prohibit students from bringing firearms to school. This remarkable conclusion is not supported in the law and, with due respect for my colleagues, I believe that it defies common sense. For these reasons, I respectfully dissent.
State universities have independent constitutional authority to adopt rules and regulations governing the conduct of their students. Because the regulation at issue in this case falls directly within the scope of that authority, it is not subject to legislative preemption. Although we may disagree with the legal analysis in the trial court’s order, the decision we have for review on appeal is nonetheless correct and it should be affirmed.
The trial court upheld the regulation on the ground that it was authorized by section 790.115(2)(a)3, Florida Statutes, (2011), and the majority has explained in some detail why it believes that the trial court’s analysis was incorrect. However, it is not necessary to address the applicability of section 790.115(2)(a)3 in order to determine whether the regulation is valid, because that section pertains to potential violations of the criminal laws. Whether a university has the power to effectively make it a crime to keep a firearm in a parked vehicle by invoking the waiver provision in the statute is a question that is not before the court at present. The plaintiff was not arrested or charged with a crime. If the state attorney decides to charge a student with possession of a firearm in a vehicle on the basis of the university’s attempt to waive the exception in subdivision (2)(a)3, the courts will have to decide whether the waiver is valid. All that is at issue in this case is the validity of a policy regulating the conduct of university students.
The majority opinion focuses on the trial judge’s legal analysis, but an error in the analysis does not necessarily warrant reversal of the order under review. We are *996 here to review the correctness of the decision, not the validity of the reasons given for the decision. It is an established principle, often referred to as the “tipsy coachman” rule, that a decision by a trial court must be affirmed if it is correct for any reason that is supported by the record. See Robertson v. State, 829 So.2d 901 (Fla.2002); Dade County School Board v. Radio Station WQBA, 731 So.2d 638 (Fla.1999). The tipsy coachman rule does not merely allow an appellate court to consider an alternative argument that is supported by the record on appeal, it requires the court to consider such an argument.
As the Florida Supreme Court explained in Radio Station WQBA, the decision of the trial court “will be upheld” if there is any basis that would support the judgment in the record. Id. 731 So.2d at 644. The rule that an appellate court is required, and not merely allowed, to affirm if there is an alternative ground to do so is illustrated by the decision in Shands Teaching Hospital and Clinics, Inc. v. Mercury Insurance Co. of Florida, 97 So.3d 204 (Fla.2012). In that case, the Florida Supreme Court reversed a decision by this court for failing to affirm a trial court decision on a valid alternative legal ground. See Shands, 97 So.3d at 212.
The order under review in the present case should be affirmed on the ground that the university had independent constitutional authority to adopt the regulation. This issue was raised by the court and addressed by the parties in oral argument and in supplemental briefs filed after the argument. Because the constitutional authority to adopt the regulation presents a pure issue of law, it is an issue that is not foreclosed by the record, as was the case in Robertson. Here, the trial court upheld the regulation in a summary judgment. The court concluded that there were no disputed issues of fact and that the university was entitled to a judgment as a matter of law. That decision was ultimately correct.
The governing power of a state university is derived directly from the Florida Constitution. Article IX, section 7(d) of the Florida Constitution provides that the Board of Governors shall “operate, regulate, control, and be fully responsible for the management of the whole university system,” and section 7(c) states that each university within the system shall be operated by a Board of Trustees under “powers and duties” granted by the Board of Governors.
Because the power vested in state universities “flows directly from the Florida Constitution,” it is self-executing. NAACP, Inc. v. Florida Bd. of Regents, 876 So.2d 636, 640 (Fla. 1st DCA 2004). So long as the university is acting within the scope of its constitutional authority, it need not obtain a grant of legislative authority to adopt a rule. In this regard, the governing power of a state university is unlike that of a state administrative agency-
The Administrative Procedure Act provides that a state agency may adopt a rule only as authorized by the Florida Legislature. See § 120.536, Fla. Stat. (2011). An agency has no legislative power of its own and is therefore dependent on the legislative branch of the government for a delegation of power. In contrast, a state university has independent constitutional authority. This distinction is recognized in section 120.52(1), Florida Statutes, (2011), which defines an agency as officers or entities “acting pursuant to powers other than those derived from the constitution.” As we have previously explained, “[t]he significance of this limitation is clear: when an officer or agency is exercising power derived from the constitution, the resulting decision is not one that *997 is made by an agency as defined in the Administrative Procedure Act.” Decker v. University of West Florida, 85 So.3d 571, 573 (Fla. 1st DCA 2012).
The governing power of a state university is also unlike the governing power of a city or county in that a university can exercise legislative power, albeit in a limited way, without legislative oversight. The Florida Constitution grants counties the power to enact ordinances but limits that power by providing that a county may adopt only those ordinances that are “not inconsistent with general or special law.” Art. VIII, §§ 1(f) & 1(g), Fla. Const. (1968). Likewise, the Florida Constitution provides that a municipality may exercise governmental power, “except as otherwise provided by law.” Art. VIII, § 2(b), Fla. Const. (1968). In contrast, there is no comparable provision in Article IX that would effectively subordinate the rulemaking authority of a university to the Legislature’s power to enact a general law. It follows from the absence of such a limitation in Article IX that legislative enactments do not invariably trump administrative regulations adopted by state universities.
There is one restriction stated in Article IX, but it deals exclusively with funding, not with the power to adopt policies or regulations. Section 7(d) provides that the power of the Board of Governors of the state university system “shall be subject to the powers of the legislature to appropriate for the expenditure of funds, and the board shall account for such expenditures as provided by law.” As we explained in Graham v. Haridopolos, 75 So.3d 315, 318 (Fla. 1st DCA 2011), approved, 108 So.3d 597 (Fla.2013), this provision effectively reserves the “power of the purse” to the Legislature. In that case, we rejected an argument that Article IX, section 7(d) vests exclusive power in the universities to set tuition rates. However, we were careful to distinguish our earlier decision in NAACP v. Florida Board of Regents on the ground that it dealt with an issue not limited by section 7(d) — the authority to adopt regulations.
Section 14.0080P of the policies and regulations of the University of North Florida prohibits a student from keeping a firearm in a vehicle parked on university property. This regulation was adopted pursuant to authority granted to the university by the Board of Governors under Article IX, section 7. The board empowered each state university to “promulgate university regulations” and required each of them to “be responsible for campus safety and emergency preparedness, to include safety and security measures for university personnel, students, and campus visitors.” See BOG Rules 1.001(3)(j) and (l). As provided in Section 5.0010R(J) of the Student Conduct Code of the University of North Florida, the possession of a firearm in a vehicle on campus in violation of section 14.0080P could subject the student to a variety of administrative penalties, including a reprimand, probation, suspension or expulsion.
The subject matter of section 14.0080P falls squarely within the scope of the university’s rulemaking power. It pertains exclusively to the conduct of students enrolled in the university and it applies only on university property. It prohibits conduct that may be lawful in another context, but that is the case with many other university regulations. No one would doubt that a university has the power to prohibit a student from smoking in a dormitory or drinking an alcoholic beverage on campus even though smoking and drinking may be perfectly lawful in other circumstances. Nor would anyone doubt that a university professor has the power to stop a student from delivering an uninvited religious speech in the middle of a class even though *998 the student would have a First Amendment right to make the same speech at another time and in another place. See Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (distinguishing the expression of an unpopular idea on school grounds, which is permitted, from disruptive speech on school grounds, which is not). The regulation in this case is no different. It is merely intended to maintain a sense of order and security within the university.
I believe that the University of North Florida had not only a right, but also a duty to adopt regulations such as the one before the court. It is fair to assume that most parents expect state universities to take reasonable precautions to ensure the safety of their daughters and sons while they are in school. This regulation was plainly designed as a safety measure. Whether it succeeds in that goal is, of course, debatable. Some would argue that the best way to keep students safe on campus is to allow them to be armed, while others would argue that the best way to ensure their safety is to prohibit guns on campus. But the debate on the merits of the policy is beside the point. We are dealing here only with the authority to adopt the regulation, not the wisdom of the regulation. If the university concludes that the best way to protect students is to prohibit guns on campus, it is not for the Legislature or the courts to interfere with that judgment.
The majority acknowledges the fact that state universities have independent constitutional authority but concludes that the regulation at issue does not fall within the scope of that authority. The problem with this argument is that it is refuted by the plain language of the constitutional provision at issue. Article IX, section 7(d) states that the “board [of governors] shall operate, regulate, control, and be fully responsible for the management of the whole university system.” This language creates a broad governing power that goes well beyond academic issues. The terms “operate,” “regulate” and “control” clearly signify that the universities also have authority to adopt campus safety regulations. There is no exception or limitation in Article IX, section 7 for safety regulations pertaining to firearms. Nor is there any exception that would put a particular part of a university campus beyond the university’s control. Because the governing power created by Article IX, section 7 applies to the “whole university system,” it necessarily applies to a university-owned parking lot.
The majority asserts that the Florida Legislature enjoys a form of “primacy” on the subject of gun safety laws. On this point the majority relies on Article I, section 8(a), of the Florida Constitution which states, “The right of the people to keep and bear arms in defense of themselves and of the lawful authority of the state shall not be infringed, except that the manner of bearing arms may be regulated by law.” The majority then cites Grapeland Heights Civic Ass’n v. City of Miami, 267 So.2d 321, 324 (Fla.1972), as authority for the proposition that the term “law” in Article I, section 8(a), refers exclusively to a law enacted by the Legislature. That is generally correct, but the principle does not operate to preclude the localized university firearms regulations, as the majority suggests.
Article I, section 8(a) states that the manner of bearing arms “may” be regulated by the Legislature. It does not state that the manner of bearing arms “may only” be regulated by the Legislature or that it “shall” be regulated by the Legislature. Moreover, Article IX, section 7 was approved by the people of Florida long *999 after the adoption of Article I, section 8(a). If the people intended to limit the power they were granting to universities in Article IX, section 7 by providing that university firearms regulations must be subordinate to state firearms laws, they could have easily done that. Article IX, section 7 does not mention Article I, section 8(a), much less suggest that it creates a kind of legislative primacy with respect to gun safety regulations.
In any event, section 14.0080P does not “regulate” firearms in the way the term is used in Article I, section 8(a). It does not purport to impair a citizen’s constitutional right to bear arms. Nor does it limit the constitutional rights of students attending the university. Although the regulation prohibits guns on university property, it does not forbid a student from owning a gun or possessing it off campus. A state university obviously has no power to enact civil or criminal laws that regulate the rights of citizens to keep and bear arms, but I think it is a far different matter to conclude that a regulation that purports to govern the students on campus is invalid because it happens to deal with firearms. The university has exclusive authority under Article IX, section 7(d) to regulate the conduct of students on campus and it seems to me that this authority implicitly includes the right to prohibit a student from bringing a gun to school.
In my view, the fallacy of the majority’s argument on this point is that it treats a condition on the exercise of a privilege as though it were the same as a restriction on a constitutional right. The owner of a home may prohibit a visitor from bringing a firearm into his or her home. A restriction such as this would not be a violation of the visitor’s rights, even though the visitor has a constitutional right to possess a firearm in other places. For the same reason, a hospital could adopt a policy of prohibiting the possession of firearms in the waiting area of its emergency room. A restriction such as that would not violate the rights of persons who are at the hospital, even though they plainly have a right to possess firearms in other places. The same logic applies here. Attendance at a university is not a right. The rules and regulations that apply as a condition of enrollment in a particular university cannot be fairly equated with laws that operate as general restrictions on the rights of all citizens.
The majority reasons that the regulation is invalid, regardless of the source of authority for adopting it, because section 790.33(1), Florida Statutes, (2011) preempts all laws and regulations pertaining to firearms. This conclusion assumes that the constitutional power vested in the Legislature is invariably superior to the constitutional power vested in state universities. I do not believe that assumption is correct. The subject matter of the controversy before the court in this case pertains exclusively to the governance of a state university. To say that this field is nonetheless preempted by the Legislature is to elevate legislative power to a level not intended by the people of this state (perhaps not intended by the Legislature itself) and to diminish the constitutional authority the people intended to vest in the universities.
The task before us is not to decide whether one governmental entity holds a more important constitutional position than another. Rather, we must determine the nature of the governmental function that is the subject of a controversy and to properly classify it within the powers that belong to a particular governmental entity. For example, a university has no power to adopt a regulation that would interfere with the method of appropriating funds for the general revenue of the state, because *1000 that is a function of the Legislature. See Art. Ill, §§ 12, 19, Fla. Const. (1968). Likewise, a university has no power to regulate the conduct of citizens at large. The power to enact general and special laws is a power that is vested exclusively in the Legislature. See Art. III, § 6, Fla. Const. (1968).
In contrast, the regulation at issue in this case is one that falls exclusively within the power vested in state universities. Whether a university student should be entitled to park on campus and, if so under what conditions is a matter for the university, not the Legislature. I do not mean to suggest that the Legislature attempted to interfere with the judgment of the university on this point. In fact, it appears to me that the Legislature recognized that it should defer to state universities on issues such as these. Section 1001.706(7)(b), Florida Statutes (2011), provides in material part that the Board of Governors has authority to restrict the use of “firearms, food, tobacco, [and] alcoholic beverages” on university property (emphasis added).
In addition to the majority opinion, there are five concurring opinions. These opinions offer a variety of reasons for striking down the university’s regulation but, significantly, no judge of this court has argued that the regulation violates a student’s right to bear arms as guaranteed by the Second Amendment of the United States Constitution and Article I, section 8 of the Florida Constitution. During the oral argument, counsel for the plaintiffs stated that this issue was not before the court. Yet, in both the initial brief and in the supplemental briefs, counsel for the plaintiffs made this argument at least obliquely. Although the court is not deciding at this point whether the regulation violates the constitutional right to bear arms, it is worth noting that this right is not absolute. As Justice Scalia has explained:
Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-cen-tury cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose, (citations omitted) For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues, (citations omitted) Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.
District of Columbia v. Heller, 554 U.S. 570, 626-27, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) (emphasis added).
I am concerned not only about the error I believe the court has made in this case as it pertains to students at the University of North Florida, but also about the effect the error will have on many other college students in Florida. Section 14.0080P of the policies and regulations adopted by the University of North Florida is not unique. Identical regulations exist at the University of Florida, Florida State University and the University of South Florida.[36] The *1001 effect of the court’s decision is to nullify the constitutional authority vested in at least four of the state’s largest universities and the consequence of the decision is to deny more than a 100,000 college students an important safety precaution these universities intended to provide.
For these reasons, I believe that the trial judge was correct in denying injunc-tive relief and in dismissing the plaintiffs’ complaint. The regulation prohibiting a student from possessing a firearm in a vehicle parked on campus is a valid exercise of authority granted to the university under the Florida Constitution and is not preempted by state law.

. See University of Florida Regulation 2.001; Florida State University Policy OP-C-14; University of South Florida Policy USF4.0010(7)(c) and 6-009; USF Handbook, *1001 sec. 4.04 at http://www.sa.usf.edu/dean/docs/ U SF_handbook.pdf.