**Marc DIAKOS, individually, and on behalf of all others similarly situated, Plaintiff**

**v.**

**HSS SYSTEMS, LLC d/b/a Parrallon Business Performance Group, and Bacen & Jordan, P.A., Defendants**

Civil Action No. 14–61784–Civ–Scola

United States District Court, S.D. Florida.

Signed September 28, 2015

Filed September 29, 2015

Michael Daniel Walrath, Medical Bill Clinic, P.A., Miami, FL, Jordan Matthew Lewis, Kelley Uustal, PLC, Fort Lauderdale, FL, for Plaintiff.

Edward M. Waller, Jr., Scott Andrew Richards, Fowler White Boggs P.A., George Calvin Hayes, Buchanan Ingersoll & Rooney, Tampa, FL, Robert Michael Klein, Klein Glasser Park Lowe & Pelstring P.L., Miami, FL, for Defendants.

### Order Granting Preliminary Approval Of Class Settlement And Certifying Settlement Class

Robert N. Scola, Jr., United States District Judge

Based upon the unopposed submissions of counsel, this Court makes the following Findings of Fact, Conclusions of Law and Order granting preliminary approval of a class action settlement and certifying, under Fed.R.Civ.P. 23(b)(2), a settlement class.

### 1. Findings Of Fact

This case arises from the Florida Supreme Court decision of *Shands Teaching*

*Hospital and Clinics, Inc. v. Mercury Insurance Company of Florida*, 97 So.3d 204 (Fla.2012). The case arose after a woman, Krystal Price, was struck by a car insured by Mercury. She received $38,418.20 in hospital services at Shands, which filed and perfected a hospital lien against her recovery. Mercury paid a total of $20,000 (bodily injury limits and PIP limits, combined) directly to Price. The hospital, in turn, sued Mercury to recover the remaining $28,418.20 of Price's medical expenses, alleging that Mercury had impaired Shands's lien. *Id.* at 207.

The trial court denied the parties' cross-motions for summary judgment. On appeal, the First District Court of Appeals reversed in favor of Mercury. Both parties appealed to the Florida Supreme Court.

Of relevance here, the Florida Supreme Court held:

> Here, the First District correctly held that the Lien Law "is a special law which creates a lien based on a private contract between Shands and its patient," and is thus unconstitutional under article III, section 11(a)(9)[, which holds that [t]here shall be no special law or general law of local application pertaining to ... creation, enforcement, extension or impairment of liens based on private contracts, or fixing of interest rates on private contracts] of the Florida Constitution.

*Id.* at 209. The Florida Supreme Court held that the Alachua County ordinance was not unconstitutional. While the court acknowledged that "[a]n ordinance enacted by authority of an unconstitutional law is void," *id.* at 210, the ordinance at issue didn't state it was enacted pursuant to a Special Act, and the Special Act didn't contain a grant of power that authorized the county to enact such an ordinance. "The Ordinance is therefore not unconstitutional by virtue of the Lien Law's invalidity." *Id.* at 211.

Under this holding, *it is possible* that lien laws created solely by special act, and that are not limited to public hospitals, are unconstitutional. This includes Marion County, whose lien was created by special act, at chapter 30965, 1955 Fla. Laws 2241. There is no corresponding county ordinance. There are six hospitals located within the county: Kindred Hospital Ocala; Munroe Regional Medical Center; Ocala Regional Medical Center; Ten Broeck Ocala; The Centers, Inc.; and West Marion Community Hospital.

Between September 5, 2013 and September 19, 2013, plaintiff Diakos was treated for injuries at the Ocala Regional Medical Center. One week after he was discharged, defendant Parallon filed a "claim of lien" for $190,056 against Diakos with the Marion County clerk's office. On March 15, 2014, defendant Bacen & Jordan, P.A., on behalf of "our client" Ocala Regional Medical Center, sent a letter by facsimile transmission to Diakos's injury lawyer asking for breakdown of "all available settlement proceeds from all sources." The letter did not contain the FDCPA "mini-Miranda" warnings.

To date, Diakos has not recovered anything from the tortfeasor whom he contends caused his injuries and he has not paid any of the claimed lien amounts to Ocala Regional.

On July 22, 2014, Diakos filed a three-count complaint against Parallon and Bacen & Jordan arising out of their attempts to collect through the imposition of an unconstitutional lien. Count I is brought

against both defendants and seeks relief under the Fair Debt Collection Practices Act for, among other things, falsely representing the character, amount or legal status of any debt; threatening to take action that cannot legally be taken; using false representation or deceptive means to collect or attempt to collect a debt; and using unfair or unconscionable means to collect any debt. (2d Am.Compl., ¶¶ 30–36.) Count II is brought under Florida's FDCPA counterpart, the Consumer Collection Practices Act, again against both defendants, because they "asserted the existence of a legal right to enforce liens they knew or should have known they did not have...." *Id.* at ¶¶ 37–43. Count III is brought against Bacen & Jordan only, under the Florida Deceptive and Unfair Trade Practices Act, and is derivative; the claim contends that Bacen & Jordan's violation of the other statutes is a "per se" FDUPTA violation. *Id.* at ¶¶ 44–47.

In general, Diakos seeks statutory damages under both the FDCPA and the CCP ($500,000 apiece) plus actual damages, constituting all amounts improperly collected under all three statutes, an injunction to prevent the defendants from filing or attempting to enforce hospital liens in Marion County, and attorneys' fees, costs and interest.

The proposed settlement defines the class as the following:

> All persons against whom hospital claims of lien were asserted in Marion, County by HSS Systems, LLC d/b/a Parallon Business Performance Group and/or Bacen & Jordan on or after June 7, 2012.

## 2. Conclusions Of Law

### A. Applicable legal standards

 Because of the two distinct elements contained in this motion—class cer-

tification and preliminary approval of a class action settlement—two legal standards apply. Rule 23, applies to the class certification motion:

> A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Lipuma v. Am. Express Co.,* 406 F.Supp.2d 1298, 1314 (S.D.Fla. 2005) (quoting *Woodward v. NORAM-Chem. Co.,* No. 94–0780, 1996 WL 1063670 at *14 (S.D.Ala. May 23, 1996)); *see also Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671 (S.D.Fla. 2006). Whether a class is certified for settlement or for trial, the Court must find that the prerequisites for class certification under Rule 23(a) and (b) of the Federal Rules of Civil Procedure are met.

*Burrows v. Purchasing Power, LLC,* No. 12–22800, 2013 WL 10167232, *1 (S.D.Fla. Oct. 7, 2013) (Ungaro, J.).

 While the Court's class certification analysis "may 'entail some overlap with the merits of the plaintiffs underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* —— U.S. ——, 133 S.Ct. 1184, 1195, 185 L.Ed.2d 308 (2013) (citations omitted). Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

Rule 23(a) is satisfied where:

- the class is so numerous that joinder of all members is impracticable;

- there are questions of law or fact common to the class;

- the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

- the representative parties will fairly and adequately protect the interests of the class.

In addition, Diakos must satisfy one of the three prongs of Rule 23(b). Here, he seeks certification under 23(b)(2), whose elements are met when plaintiff shows that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole ...." Fed.R.Civ.P. 23(b)(2).

■ The purpose behind class actions is to eliminate the possibility of repetitious litigation and provide small claimants the means of obtaining redress for claims too small to justify individual litigation. *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 249 (3d Cir.1975) ("Any resultant unfairness to the members of the class was thought to be outweighed by the purposes behind class actions: eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation."). Thus, "[d]oubts regarding the propriety of class certification should be resolved in favor of certification," *Singer v. AT & T Corp.*, 185 F.R.D. 681, 685 (S.D.Fla.1998) (Kehoe, J.), as it is well established that class-action lawsuits were designed to be effective tools for deterring wrongdoing. *See In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1355 n. 24 (S.D.Fla.2011) (King, J.) ("As one of Plaintiffs' experts opined, 'in small-stakes cases, the most important function of the class action device is not compensation of class members but deterrence of wrongdoing ... [and] if defendants did not pay someone-even third parties like *cy pres* charities-for such harms, then defendants would have every incentive to cause such harms in the future ...' ") (citation omitted; alterations in original). This case, involving relatively small individual damages inflicted on large numbers of people, presents a classic example of appropriate circumstances for class certification. *See Parker v. Risk Mgmt. Alts., Inc.*, 206 F.R.D. 211, 213 (N.D.Ill.2002) ("Courts have repeatedly held that it is appropriate to certify similar FDCPA claims for class action treatment.").

In addition, Diakos seeks preliminary approval of a possible class action settlement, as well as an order approving a notice, consistent with Fed.R.Civ.P. 23(b)(2)—the rule under which certification is appropriate. The proposed settlement has three principal components of relief: (1) defendants have agreed to release all hospital liens filed against class members during the class period (2) defendants have agreed to stop filing hospital liens based upon the Marion County Special Act until—at the earliest—the Marion County hospital lien Special Act is ruled valid; and (3) has agreed to pay the class a total of $575,000, inclusive of attorneys' fees and costs and a class representative award.

**B. Diakos has standing**

■ Though not embedded within the actual text of Rule 23, "[i]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado–Steiman ex rel.*

*Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir.2000). "To have standing, a plaintiff must show (1) an 'injury-in-fact,' (2) a causal connection between the alleged injury and defendant's challenged action, and (3) that 'the injury will be redressed by a favorable decision.'" *Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 666 (S.D.Fla.2010) (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir.2001)).

■ As for these elements, there cannot be any doubt that Diakos has standing. He was subject to lien filing practices described in the Second Amended Complaint and in the class definition.

## C. Diakos satisfies Rule 23(a)(*l* )-(4)

### (1) Numerosity

■ Rule 23(a)(1) requires that there be a sufficient number of class members to make joinder impracticable. "Under Rule 23(a)(1), the numerosity requirement is met if joinder of all members is impracticable. This requirement does not demand that joinder would be impossible, but rather that joinder would be extremely difficult or inconvenient." *Israel v. Avis Rent–A–Car Systems, Inc.*, 185 F.R.D. 372, 377 (S.D.Fla.1999). While there is no hard and fast numeric requirement, "generally less than twenty-one is inadequate, more than forty adequate, with numbers in between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986), *cert. denied*, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). The "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 680 (S.D.Fla.2009) (Dimitrouleas, J.) (internal quote marks and citation omitted). "The Court may also consider factors such as the geographic diversity of the class members, the nature of the action, the size of each plaintiffs claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits." *Muzuco v. Re\$ubmitIt*, 297 F.R.D. 504, 515 (S.D.Fla.2013) (Scola, J.) (internal quote marks omitted). The "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied."

■ In lieu of a noticed corporate representative deposition, Parallon has provided a "Declaration of Jeannette McDougall" that asserts—under penalty of perjury—that, since September 2012, it has filed 3,103 claims of lien on behalf of Ocala Regional in Marion County. Thus, numerosity is established.

### (2) *Commonality*

■ Rule 23(a)(2) demands that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "This part of the rule does not require that all the questions of law and fact raised by the dispute be common, or that the common questions of law or fact predominate over individual issues. *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal quotation marks and citations omitted). The Eleventh Circuit has noted that commonality requirement is a "low hurdle." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). "[F]or purposes of Rule 23(a)(2), '[e]ven a single [common] question' will do." *Wal–Mart Stores v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2566, 180 L.Ed.2d 374 (2011).

■ The test is met here. As the court observed in *Sharf v. Financial Asset*

*Resolution, LLC,* 295 F.R.D. 664, 669–70 (S.D.Fla.2014) (Cohn, J.):

> The Court finds that Plaintiffs contention that all class members received the same form collection letter is sufficient to establish commonality. *See Klewinowski v. MFP, Inc.,* No. 13–1204–T–33TBM, 2013 WL 5177865, at *2 (M.D.Fla. Sept. 12, 2013) ("The requirement of commonality is satisfied here because it is alleged that Defendant issued standardized debt collection letters to each member of the putative class in violation of the FDCPA.").

The Court's calibration of the common issue in *Sharf* applies here, as well. All class members have been subject to the same contested collection practices of the two defendants.

## (3) Typicality

▬▬▬ Rule 23(a)(3) requires that the claims of the representative party be typical of the claims of the class. "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1322 (11th Cir.2008) (citations, internal quote marks and brackets omitted). Typicality and commonality are often merged; "we have distinguished the two concepts by noting that, traditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Vega,* 564 F.3d at 1275 (citation, internal quote marks and brackets omitted); *see Sharf,* 295 F.R.D. at 670 ("The Court agrees with Plaintiff that the sending of form debt collection letters demonstrates typicality.").

▬▬▬ The Court finds that Diakos's claims are typical of the class: He is a member of his proposed class and has suffered the same injury.

## (4) Adequacy

▬▬▬ The final requirement of Fed. R.Civ.P. 23(a)(4) is that the representative parties will fairly and adequately protect the interests of the class. "Rule 23(a)(4) requires that the representative party in a class action 'must adequately protect the interests of those he purports to represent.'" *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1189 (11th Cir.2003) (citing *Phillips v. Klassen,* 502 F.2d 362, 365 (D.C.Cir.1974)). There are two distinct questions:

- The class representative must adequately prosecute the action; and

- There must not be any substantial conflict of interest existing between the representatives and the class.

*Valley Drug,* 350 F.3d at 1189.

▬▬▬ Both are met here. Here, Diakos's claims are identical to the other members of the class and he seeks no preferential treatment. His interests are not antagonistic to those of the class.

As to counsel's adequacy, "[a]bsent specific proof to the contrary, the adequacy of class counsel is presumed," *In re Seitel, Inc. Securities Litig.,* 245 F.R.D. 263 (S.D.Tex.2007); and this Court, in *Muzuco v. Re$ubmitIt, LLC,* found one of Diakos's lawyers satisfied this element, as well. Diakos's counsel has submitted a declaration

(filed contemporaneously) that evidences adequacy. *See Muzuco,* 297 F.R.D. 504, 518 (S.D.Fla.2013) (Scola, J.) ("Plaintiff has retained competent counsel to represent her and the class. Class counsel here regularly engages in consumer class action litigation and other complex litigation similar to the present action. Moreover, class counsel has vigorously and competently represented the class members' interests in this action.").

### D. Diakos satisfies Rule 23(b)(2)

In addition to satisfying all of the elements found at Rule 23(a), Diakos must satisfy one of the three prongs of Rule 23(b). In this case, Diakos meets the requirements of Rule 23(b)(2).

 A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Rule 23(b)(2) generally does not extend to cases in which the appropriate final relief relates primarily to money damages.

However, class actions certified under Rule 23(b)(2) are not limited to actions requesting injunctive and declaratory relief, but may include cases that also seek monetary damages where the money damages are "merely incidental." *Probe v. State Teachers' Retirement Sys.,* 780 F.2d 776, 780 (9th Cir.1986), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). "Incidental" means that the monetary damages "flow directly from liability to the class as a whole on the claims forming the basis of the ... declaratory relief."

*Swanson v. Mid Am, Inc.,* 186 F.R.D. 665 (M.D.Fla.1999) (citing *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 413 (5th Cir.1998)). More specifically, FDCPA class actions certified under Rule 23(b)(2) are also not limited to actions requesting injunctive and declaratory relief. *Ballard v. Equifax Check Services, Inc.,* 186 F.R.D. 589, 596–97 (E.D.Cal.1999) (certifying FDCPA class under Rule 23(b)(2) on the issues of liability, declaratory relief, and statutory damages but reserving certification of actual damages for certification under Rule 23(b)(3)); *Gonzales v. Arrow Fin. Services, LLC,* 233 F.R.D. 577 (S.D.Cal. 2006) (certifying FDCPA class under Rule 23(b)(2) where plaintiffs received standardized demand letters and sought declaratory relief and statutory damages); *Borcherding–Dittloff v. Transworld Systems, Inc.,* 185 F.R.D. 558, 565–66 (W.D.Wis.1999) (certifying class under Rule 23(b)(2) for claims under FDCPA where plaintiffs sought declaratory relief and statutory damages); *Gammon v. GC Services Ltd. P'ship,* 162 F.R.D. 313, 319–22 (1995) (certifying class under Rule 23(b)(2) for claims under FDCPA seeking declaratory relief and statutory damages); *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665 (M.D.Fla. 1999) (same).

*Hunt v. Check Recovery Sys., Inc.,* 241 F.R.D. 505, 512 (N.D.Cal.2007).

 Under the circumstances of the proposed settlement (discussed below), certification under 23(b)(2) makes sense. Here, class members will get the benefit of two distinct, and significant, injunctive remedies. *First,* under the terms of the settlement, all hospital liens filed by defendants during the class period will be released. *Second,* defendants have agreed

to not file hospital liens in Marion County until the county's Special Act is held to be constitutionally valid or its lien law otherwise changes in a manner consistent with *Shands.*

### E. The Court appoints Diakos's lawyers as class counsel

Under Federal Rule of Civil Procedure 23(g), "a court that certifies a class must appoint class counsel." In this case, Diakos requests that the Court appoint his attorneys Kelley Uustal LLC, Medical Bill Clinic, P.A., and the Pineyro Law Firm, P.A. as class counsel. In appointing class counsel, the Court must consider the following factors:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed.R.Civ.P. 23(g)(1)(A).

Diakos's lawyers have demonstrated that they are capable of prosecuting this action. They warrant appointment as class counsel.

### F. The Court preliminarily approves the settlement

The proposed settlement of this case has three distinct components. *First,* under the terms of the settlement, all hospital liens filed by defendants pursuant to the Marion County Special Act during the class period will be released. *Second,* defendants have agreed to not file hospital liens in Marion County pursuant to the Marion County Special Act until the county's Special Act is held to be constitutionally valid or its lien law otherwise changes in a manner consistent with *Shands.* And *third,* defendants have agreed to establish a common fund of $575,000 that will fund the payment of statutory damages, attorneys' fees and costs, and a proposed class representative award.

In reviewing the Stipulation and Settlement Agreement for preliminary approval, this Court must determine whether it is within the range of fair, reasonable and adequate. *Manual for Complex Litig.* § 30.41. A district court has broad discretion with respect to the approval of class action settlements, and the court's decision is reviewed for an abuse of discretion. *See e.g., In re Sunbeam Sec. Litig.,* 176 F.Supp.2d 1323, 1329 (S.D.Fla.2001) (Middlebrooks, J.). The court, however, "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *Id.* (internal citation omitted).

Where, as here, the proposed settlement is the result of serious, arms'-length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval and does not grant preferential treatment to plaintiff or other segments of the class, courts generally grant preliminary approval and direct that notice of a formal final approval hearing be given to class members. *See e.g., Williams Foods, Inc. v. Eastman Chem. Co.,* No. 99–16680, 2001 WL 1298887, at *3–5 (D.Kan. Aug. 8, 2001); *see also In re Minolta Camera Prods. Antitrust Litig.,* 668 F.Supp. 456, 459–60 (D.Md.1987).

 This case easily satisfies the standards required for preliminary approval. Even absent the monetary recovery (which might eclipse the total statutory damage award theoretically possible here), the value of the injunctive relief *alone* warrants preliminary approval. In addition, there will be no requirement that class members complete a claim form, which usually dramatically reduces the rate of class participation.

### 3. Order

A. The Court certifies the following class under Federal Rule of Civil Procedure 23(b)(2):

> All persons against whom hospital claims of lien were asserted in Marion, County by HSS Systems, LLC d/b/a Parallon Business Performance Group and/or Bacen & Jordan on or after June 7, 2012.

B. The Court preliminarily approves the class action settlement the terms of which are described in the parties' submissions.

C. The Court directs the dissemination of the proposed class notice. Because this class is certified under Rule 23(b)(2), a class member may not opt out, but may object. The Court orders that, to be timely, written notice of an objection in appropriate form must be mailed to the Court and postmarked at least 14 days before the date set in the Notice for the Final Approval Hearing, and served upon class co-lead counsel Jordan Lewis, Kelley Uustal, 700 SE 3rd Avenue, Fort Lauderdale, FL 33316.

D. Any further proceedings as to the merits of this Litigation are stayed and suspended and the Court will defer ruling on the pending motions to dismiss and for summary judgment until further order of this Court; and pending determination of the fairness, reasonableness, and adequacy of the settlement set forth in the Settlement Agreement, no Class Member, either directly, representatively, or in any other capacity, shall institute, commence, or prosecute against Defendants any of the Released Claims in any action or proceeding in any court or tribunal.

E. The Court sets this action for a fairness hearing regarding the final approval of this class action settlement on **December 1, 2015 at 8:30 a.m.** at the Wilkie D. Ferguson, Jr. Federal Courthouse, Courtroom 12–3, 400 North Miami Avenue, Miami, Florida 33128.

**Done and ordered.**